367 So.2d 910 (1979)
GATES RUBBER COMPANY
v.
Eunice C. DUKE.
No. 50590.
Supreme Court of Mississippi.
February 7, 1979.
Rehearing Denied March 7, 1979.
*911 Lott, Sanders & Gwin, Arnold F. Gwin, Greenwood, for appellant.
Odom, Odom & McCain, Talbot O. McCain, Greenwood, for appellee.
En Banc.
LEE, Justice, for the Court:
Mrs. Eunice C. Duke filed a products liability suit in the Circuit Court of Leflore County against Gates Rubber Company, seeking damages for the death of her husband. The jury returned a verdict in her favor in the sum of two hundred nine thousand nine hundred seventy-nine dollars twenty-five cents ($209,979.25). The trial judge entered a remittitur of fifty thousand dollars ($50,000), which was accepted by the plaintiff, and judgment was entered for her in the sum of one hundred fifty-nine thousand nine hundred seventy-nine dollars twenty-five cents ($159,979.25). Gates Rubber Company appeals and assigns fourteen (14) errors in the trial below.
Mr. William Duke was employed as manager of the Farmers' Supply Cooperative at Schlater, Mississippi. The company sold, among other things, liquid anhydrous ammonia, and the plant was located near Schlater. On the afternoon of June 26, 1975, a customer brought his ammonia tank to the plant, and the tank was in the process of being filled with anhydrous ammonia from the Co-op's transfer rack. The transfer was effected by means of a hose leading from the supply tank to the customer's tank. Employee Love was handling the actual transfer of the ammonia.
Mr. Duke and the customer (Overstreet) were sitting in the Co-op office building when they heard a loud explosion and looked up to see Love running from the tanks yelling that the hose had burst. Mr. Duke and Overstreet ran out of the office; Duke picked up a gas mask and attempted to approach the transfer rack, but was turned back by the spewing anhydrous ammonia which rapidly vaporized on contact with the air. Duke, Overstreet and Love were forced to leave the plant and retreat up a gravel road leading to the highway as the wind blew the ammonia toward the office. Duke was driven in an automobile to a nearby telephone where he called the Farmers' Supply Ammonia Plant for assistance. He and Roy Petty, who had driven to the area, then returned to the transfer rack with the windows of the automobile rolled up, Duke put on the gas mask, jumped out, ran to the rack and closed the valve thereby shutting off the flow of ammonia. He got back into the car and Petty drove to the highway. When Duke emerged from the car at the highway, he slumped to his knees and appeared to be sick. He was taken to the hospital where he remained for twenty-three (23) days and expired. His condition was diagnosed as pneumonitis caused by the inhalation of anhydrous ammonia and he also had suffered a myocardial infarction.

I.
The trial court erred in refusing appellant's request for a peremptory instruction.

II.
The verdict of the jury and judgment of the court were contrary to law and against the overwhelming weight of the evidence.
The appellee contends that the transfer hose was defective as a result of the manufacturing process and that such condition existed when it was sold by appellant. After the accident, the hose was found to be discolored at the burst site, and appellee argues that this, along with other facts, indicates a defective condition in the hose.
Appellant contends that the hose was properly manufactured; that it was not defective after the manufacturing process, or when it was sold by Gates; that the hose had been maintained in a bent position (near the spud) for a long period of time which weakened it; and that the hose burst as a result of deteriorating from that condition.
Expert witnesses testified for the appellant and appellee in support of their respective theories of the case. Evidence as to whether or not the hose was defective when *912 manufactured and sold by appellant was in direct conflict.
The rule on request for a peremptory instruction requires that all evidence favorable to the party against whom the peremptory instruction is requested must be accepted as true, all evidence in favor of the party requesting the peremptory instruction in conflict with that of the other party must be disregarded, and, if the evidence and the reasonable inferences to be drawn from same will support a verdict for the party against whom it is requested, then the peremptory instruction should be refused. Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975). When the evidence is in conflict the issues must be submitted to the jury for decision. Ricks v. Bank of Dixie, 352 So.2d 798 (Miss. 1977).
In the present case, the evidence is in direct conflict and establishes an issue of fact for decision by the jury. We are of the opinion that the evidence supports the jury's verdict on the issue of liability, and that the first two assignments are without merit.

III.
The court erred in granting Instruction P-5 requested by appellant.
Instruction P-5 was a sudden emergency instruction and told the jury that, if it believed Duke was confronted with a sudden emergency caused by the bursting of the hose and the escape of the ammonia, that such sudden emergency was not of Duke's making, that Duke was not the cause of the sudden emergency, and that he acted reasonably and prudently after being confronted with same, then Duke was not negligent in responding to the sudden emergency situation.
Sudden emergency instructions have been granted frequently in automobile accident cases. In most situations, they are doubtful when requested and dangerous to a party's case when given. The recent case of Wood v. Walley, 352 So.2d 1083 (Miss. 1977), set forth the following requirements for applying the rule in an automobile accident case:
"(1) The motorist seeking the instruction must be driving in a reasonable and prudent manner; (2) the driver must be suddenly confronted with an unexpected and sudden emergency; (3) the emergency cannot be created or contributed to by the negligence or the wrongful conduct of the driver claiming the benefit of the rule; (4) the driver must be placed in a position of peril to himself; (5) the driver cannot have sufficient time in which to determine by rational deliberation the best alternative; (6) and that the degree of care to be weighed by the jury under the said emergency doctrine is that which a reasonably prudent and capable driver would use under the `unusual' circumstances brought about by the sudden emergency." 352 So.2d at 1086-1087.
The evidence in the present case indicates that Mr. Duke foresaw a situation might arise with reference to the escape of anhydrous ammonia because he kept a gas mask in his office; that he went out of the office and saw the vaporized ammonia being blown toward him by the wind; that he left the plant and went up a gravel road toward the highway; that he went to a nearby telephone and called the main ammonia plant for help; that he was driven back to the area where the ammonia was escaping; that he went to the ammonia transfer rack, put on the gas mask, got out and closed the valve which stopped the flow of ammonia, and then was driven back to the road where he became ill.
Under those facts and circumstances, the trial court erred in granting the emergency instruction. Appellant requested and was given the following instructions:
(1) Instruction D-7 told the jury that, if it believed the hose left the manufacturer in a reasonably safe condition and that the burst was due to the unreasonably long period of time with a bend in it where the hose left the spud, then the verdict should be for appellant.
(2) Instruction D-8 told the jury that Farmer's Supply Cooperative was negligent in failing to have an excess flow valve on *913 the transfer rack and that, if such negligence was the sole proximate cause of Duke's death, the verdict should be for appellant.
(3) Instruction D-10 told the jury that the hose had been attached to the transfer rack for more than two (2) years, that Duke had been instructed by his employer to change the hose at least every two (2) years, which he failed to do, and that, if such negligence was the sole proximate cause of Duke's death, the verdict should be for appellant.
(4) Instruction D-13 was a direct response to Instruction P-5 and told the jury that if it believed Duke got away from the escaping ammonia onto the highway and that he did not act as a reasonable and prudent person in going back into the ammonia under all the circumstances, then the jury must find Duke to have been negligent.
(5) Instruction D-14 told the jury that even though it believed the hose had a defect when it left the manufacturer, and that the defect caused the hose to burst, if the jury believed that negligence of Duke or Farmers' Supply Cooperative were the sole proximate cause of Duke's death, then the verdict should be for appellant.
(6) Instruction D-17 told the jury that, if Duke could have avoided his death by the exercise of reasonable care, and that his failure to exercise reasonable care was the sole proximate cause of his death, then the verdict should be for appellant.
(7) Instruction D-18 was a contributory negligence instruction and told the jury that, if it believed Duke committed a negligent act (or acts) under the other instructions given by the court, that proximately contributed to his injuries and death, then the damages should be diminished by that amount which otherwise would have been awarded to the plaintiff, in proportion to the negligence attributable to Duke.
All justices agree that the sudden emergency instruction (P-5) should not have been given. Justices Patterson, Smith, Robertson, Sugg, Walker, Broom and Cofer think that the instruction was prejudicial and constituted reversible error. Justices Lee and Bowling think that the error was cured by the above mentioned instructions for appellant, that, reading all instructions together, appellant could not have been prejudiced and the instruction does not constitute reversible error.
We all are of the opinion that the court committed no error in granting and refusing the other instructions complained of, under the facts presented by the record.

IV.
The court erred in permitting introduction in evidence by appellee of certain advertisements relating to the hose manufactured by Gates.
Advertisements of Gates Rubber Company extolling the safety and construction of the Gates anhydrous ammonia hose were admitted in evidence. It may be argued that the advertisements constitute an admission against interest by appellant. 29 Am.Jur.2d Evidence § 597 (1967); 31A C.J.S. Evidence § 283 (1964). A majority of the justices think that the admission of such evidence does not constitute reversible error. Justices Lee and Bowling are of the opinion that the advertisements were properly admitted. However, on retrial of the case, appellee should carefully consider whether they should be offered in evidence again.
We have carefully considered the remaining assignments of error and are of the opinion that either they do not constitute reversible error or that they will not occur on a retrial of the case, and we do not consider it necessary to discuss them here.
The judgment of the lower court is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and COFER, JJ., concur.
LEE and BOWLING, JJ., dissent as to Parts III and IV.