392 So.2d 196 (1980)
Robert KNAPP
v.
James B. STANFORD.
No. 51749.
Supreme Court of Mississippi.
August 6, 1980.
Rehearing Denied January 21, 1981.
C.R. McRae, Pascagoula, for appellant.
Bryan, Nelson, Allen, Schroeder & Backstrom, John W. Chapman, Pascagoula, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant appeals from an adverse jury verdict and judgment in the Circuit Court of Jackson County. His declaration alleged that he sustained serious personal injuries in a motor vehicle accident that occurred on the night of December 31, 1977. He assigns several errors in requesting a reversal of the cause. We find that only one alleged error has merit and this error requires a reversal for a new trial. The lower court erred in granting what has commonly been known as a "sudden emergency" instruction.
We stop here and caution those who might hurriedly read the first part of this opinion and overlook the final part that the Court by its inherent power is hereby abolishing the so-called doctrine of "sudden emergency" as it applies to negligence actions.
At about eleven o'clock P.M., on the night in question, appellant was a passenger in the rear seat of a vehicle known as a "Blazer" owned and operated by appellee. The vehicle was being driven in a westerly direction on U.S. Highway 90, a few miles *197 west of the City of Pascagoula, Mississippi. The accident occurred as the highway was beginning to make "a long sweeping left directional curve." Admittedly, the right wheels of the vehicle first went off the right edge of the hard surface part of the highway and when it came back onto the highway the vehicle turned over two or three times and landed in the ditch on the left side of the highway.
The testimony regarding the occurrence, including the speed, was conflicting so that the true facts were for the jury to determine. Appellee testified that he was operating his vehicle on the proper side of the road at a reasonable speed when a vehicle being operated from the opposite direction began coming over on appellee's side of the roadway; that it was necessary for him to turn his vehicle to the right, which caused the right wheels to be driven onto the highway shoulder and down the shoulder. He further testified that when he attempted to drive the vehicle completely back onto the hard surface that the raised part of the hard surfaced road caused him to lose control of his vehicle, resulting in its turning over as hereinbefore stated.
Appellant testified that the vehicle was being operated at a high rate of speed; that a few seconds before the accident occurred appellee stated that he was traveling approximately 90 or 95 miles per hour. Appellant stated that he did not see another vehicle on the roadway at any time.
Under the above general statement of the facts, appellee requested and was granted what is commonly known as the "sudden emergency" instruction. This instruction reads as follows:
The court instructs the jury that under the law when a person is confronted with a sudden emergency not of his own making and is by reason thereof placed in a position of peril to himself without sufficient time in which to determine with certainty the best thing to do, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances, and in this case if you believe from a preponderance of the evidence, that James B. Stanford, immediately prior to the accident in question was driving his vehicle on his right side of the road, at a reasonable rate of speed and he was suddenly, without warning, confronted with the vehicle driven by persons unknown within James Standford's lane of traffic and that the presence of the other vehicle constituted a sudden emergency which was not of a making of the defendant, James B. Stanford, and if you further find from a preponderance of the evidence that after having been confronted with such sudden emergency, if any, the defendant, James B. Stanford, used the same degree of care that a reasonably prudent automobile driver would have used under the same or similar unusual circumstances, if any, but was unable to avoid the accident giving rise to this lawsuit, then the defendant, James B. Stanford, was not guilty of negligence which proximately caused the collision in question, and in that event, it would be your sworn duty to return a verdict for the defendant, James B. Stanford.
We hold that even assuming the truthfulness of appellee's testimony, the granting of this instruction to the jury was error. According to appellee, the "sudden emergency" existed when an approaching vehicle in Stanford's lane of travel caused him to drive the right wheels of his "Blazer" off the road surface. This resulted in the right wheels of the vehicle traveling down the shoulder of the roadway. Appellee was positive in his testimony that the cause of the vehicle overturning was the manner in which the vehicle returned to the hard surface part of the roadway. Admittedly, appellee at no time applied his brakes. A photograph introduced in evidence clearly showed that the road surface had recently been repaved. Appellee contended that this newly paved surface raised the road level some six or eight inches above the level of the road shoulder, and that this condition caused him to lose control of his vehicle.
The distance the vehicle traveled with the right wheels on the shoulder before appellee's *198 attempt to return to the hard surface is disputed. Regardless of this, it is clear that the "sudden emergency" was over and that another factor caused the driver to lose control of the vehicle. As stated above, it is undisputed that the sole cause of the accident was either the manner in which appellee attempted to drive back onto the road surface, the speed of the vehicle, or the fact that the right wheel or wheels caught on the raised road surface causing the vehicle to overturn.
The testimony is positive that the lights of the vehicle were burning and the appellee was looking ahead prior to his attempt to return to the roadway. As stated above, he contends that the edge of the blacktop was six or eight inches higher than the roadway shoulder. If this was true, the situation clearly was seen, or should have been seen, by appellee prior to his attempt to return to the highway without applying his brakes. The principle of law is clear and has been repeated a number of times that a person is charged with seeing that which he should have seen and that which is in plain view, open and apparent. Campbell v. Schmidt, 195 So.2d 87 (Miss. 1967); Stewart v. White, 220 So.2d 271 (Miss. 1969); Tippit v. Hunter, 205 So.2d 267 (Miss. 1967); Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1969); Shideler v. Taylor, 292 So.2d 155 (Miss. 1974).
It is inescapable, therefore, that there was a jury question as to whether the appellee saw, or should have seen, the alleged dangerous condition within the range of his headlights prior to attempting to return to the hard surface, and was negligent in the action he took.
For all the above stated reasons, we hold that the "sudden emergency" instruction did not apply to the undisputed facts in this case, and it is necessary to reverse the case for that reason.

THE DOCTRINE OF SUDDEN EMERGENCY IN NEGLIGENCE CASES IS HEREBY ABOLISHED PROSPECTIVELY
Over the years we have cautioned trial attorneys in a large number of cases regarding the danger of requesting and securing the so-called "sudden emergency" instruction. During the past twenty-five years, this Court has considered approximately twenty-seven cases on appeal involving the propriety of the instruction either in its language or applicability and out of those cases approximately twenty have been reversed because the instruction was erroneous in some manner. As was recently said in Gates Rubber Co. v. Duke, 367 So.2d 910 (Miss. 1979):
Sudden emergency instructions have been granted frequently in automobile accident cases. In most situations they are doubtful when requested and dangerous to a party's cause when given.
The hazard of relying on the doctrine of "sudden emergency" is the tendency to elevate its principles above what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed "sudden emergency." Also it tends to confuse the principle of comparative negligence that is well ingrained in the jurisprudence of this State. The fallacy is pointed out in the instruction itself when after seemingly commenting on the evidence, the court instructs that the defendant should have "used the same degree of care that a reasonably prudent automobile driver would have used under the same or similar unusual circumstances." In this Court's opinion, the same rules of negligence should apply to all circumstances in a negligence action and these rules of procedure adequately provide for instructions on negligence. This Court indicated its disfavor of the "sudden emergency" doctrine as early as 1951 in the case of Jones v. Dixie Greyhound Lines, 50 So.2d 902 (Miss. 1951), where it was said:
The emergency rule is not an exception to the general rule requiring reasonable care. The existence of an emergency is simply one of the circumstances contemplated by the normal standard of care, in seeking to ascertain whether the defendant *199 acted as an ordinarily prudent and careful person would have done under the same circumstances. 5 Am.Jur., Automobiles, Sec. 171. Where an actor is confronted with a sudden emergency, the law does not require of him more than it is reasonable to expect of him under the circumstances which confront him. Although the actor cannot be held to the same standard of conduct as one who has had an opportunity to reflect, this does not mean that any different standard is to be applied in an emergency. The conduct required is still that which is reasonable under the circumstances.
The Supreme Court of Oregon has analyzed the fallacy of attempting to promulgate separate negligence principles under a "circumstance" called a "sudden emergency" in the case of Harkins v. Doyle, 271 Or. 664, 533 P.2d 785 (1975); Jones v. Mitchell Brothers Truck Line, 266 Ore. 513, 511 P.2d 347 (1973); and Evans v. General Telephone Co., 257 Ore. 460, 479 P.2d 747 (1971). In Jones, the Oregon Court said:
In the Evans case we pointed out that the usual instructions on negligence sufficiently covered "what a reasonably prudent person would do under all circumstances, including those of a sudden emergency.
In a well written article appearing in the Mississippi Law Journal, Vol. 36 at page 392 (1965), by Virgil G. Gillespie, the principle we are discussing was set out as follows:
The standard of care in actions based upon negligence is ordinarily measured in terms of the proverbial question: What would a reasonably prudent person have done under the same or similar circumstances? The emergency doctrine provides no exception to this general rule. The test is still the same. The existence of an emergency is simply one of the circumstances in the light of which the actor's conduct must be judged. The rule requiring reasonable care is sufficient to take into consideration the excitement and confusion which normally accompany the emergency situation. While it is said that one confronted with a sudden emergency is not held to the same degree of care as one who had an opportunity to deliberate, this does not mean that any different standard is to be applied than in negligence cases generally. Some courts have spoken in terms of the application of a lower or diminished standard of care in emergencies. However, it is clear that they are not referring to the standard itself, but rather to the amount of care required because of the unusual circumstances.
We conclude, therefore, that the orderly disposal of negligence cases would be best served by applying uniform principles of negligence under all circumstances. The test is whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances. We do not mean to imply that abstract instructions on negligence should be granted by the trial court. As in the negligence instructions in all cases, the alleged negligent act should be tied to the evidence presented on that particular issue or circumstance.
This case was considered en banc and in the opinion of a majority of the judges, the act of abolishing the so-called "doctrine of sudden emergency" and its corresponding instruction on "sudden emergency" shall take effect and apply to all cases tried after the date this opinion is issued.
REVERSED AND REMANDED.
PATTERSON, C.J., and SUGG, BROOM and LEE, JJ., concur.
SMITH and ROBERTSON, P. JJ., and WALKER and COFER, JJ., dissent.
SMITH, Presiding Justice, dissenting:
With deference to the views of the majority, I join Justice Walker in his dissent.
In the past, the making of declaratory or anticipatory decisions has been avoided by this Court, which has limited itself heretofore to deciding questions essential to the determination of issues presented by the case under consideration on appeal. Statements *200 of opinion writers in discussing questions not presented by a case being reviewed uniformly have been regarded as dicta, not controlling in future cases in which such issues actually may arise. I have grave doubt that we should declare a rule in this case, in which, it is asserted, there is no question of sudden emergency, which will anticipate and control future cases, the facts of which we "know not of." We cannot now know whether the present action, which will deprive future litigants of the right to sudden emergency instructions in cases in which such an instruction is appropriate and compatible with the facts in evidence, will not work a substantial denial of justice when such a case actually does arise. The drafting of a proper sudden emergency instruction requires only an examination of the decisions of this Court on the subject, and this should not be regarded as imposing an insuperable burden upon members of the Bar. I have considerable doubt as to the necessity or desirability of the declaratory or anticipatory features of the decision undertaking to preclude the granting of sudden emergency instructions in proper cases which may come before us at some future date, no matter what the circumstances may be.
WALKER and COFER, JJ., join in this dissent.
WALKER, Justice, dissenting:
I respectfully dissent from the majority opinion of my colleagues. They state, "... it is clear that the `sudden emergency' was over" when the appellant's car was forced from the road, and hold it was error to give a "sudden emergency" instruction. In my opinion such reasoning defies logic. The emergency situation was only beginning at that point.[1]
The testimony was conflicting on many key points. However, in determining whether a sudden emergency instruction is warranted by the evidence, the testimony must be viewed in the light most favorable to the party invoking the doctrine. Viewed in this light the evidence clearly warranted the giving of the instruction. At the very least the evidence presented a classic question for the jury.
The evidence shows that this accident occurred on a newly repaved portion of old Highway 90. It was late at night, dark, and photographs of the area show no street lights or other lights in the vicinity. The road surface was blacktop, and there were no painted lines or other markings on the road to indicate where the pavement ended and the shoulder began. The road surface was much higher than the shoulder, perhaps as much as six or eight inches higher in places, and Mr. Stanford was unaware of this fact. In addition, there was loose dirt on the side of the road, presumably left there by the road crew that paved the road. The shoulder was bumpy, and it was more like a ditch in some places. Also, Mr. Stanford was aware that he was approaching a railroad trestle although the trestle had not yet come into his view.
*201 Stanford stated he was forced off the side of the road by a truck approaching from the opposite direction. He stated he was driving his vehicle in the proper lane at a reasonable speed at this time. The initial action he took to avoid a head-on collision was to veer to the right so that the two wheels on the passenger side dropped onto the shoulder of the road. He took his foot off the accelerator and coasted, with the two wheels off the road, for two, three or four seconds. During these few seconds the vehicle was tilting at an angle toward what testimony indicates to be a ditch on the right side of the road. Mr. Stanford then made the unfortunate decision to attempt to steer his vehicle back onto the level road. As he was doing so, the tires caught on the edge of the pavement and the vehicle went into a spin, flipping over into a ditch on the left side of the highway.
The plaintiff was a passenger in the rear seat of Mr. Stanford's Blazer. His own testimony indicates he was "scared" while the vehicle was off the side of the road, and it appeared to him that Mr. Stanford also had "got scared."
Given these facts it is clear to me that a proper sudden emergency instruction was appropriate. In Peel v. Gulf Transport Co., 252 Miss. 797, 174 So.2d 377 (1965), we stated:
The doctrine of sudden emergency is a legal defense to an alleged failure to use due care. It is in the nature of a confession and avoidance. It is the rule of expedient action under compulsion and stress of impending danger. It is a confession of having done acts, or having failed to perform a duty, which, under ordinary circumstances, would have constituted negligence, but which done or omitted under the stress of sudden peril were in fact acts or omissions of a reasonably prudent man acting under the same or similar circumstances. In order to invoke the doctrine of sudden emergency, it must appear that there was a time after the discovery of the impending peril, in which the party charged might have made a choice as to his course of action, and if having chosen one of two alternatives, although his `snap judgment' or instant decision, may not have been proper had the party had time to carefully consider and deliberate upon a proper course to pursue; nevertheless, if he afterwards pursues the course a reasonably prudent person would have pursued under a similar danger, he would not be held to the same strict accountability legally required under ordinary circumstances. This is true because the decision and course pursued was made under excitement, fear and bewilderment engendered by the impending danger, so as to have affected his judgment. (252 Miss. at 815-816, 174 So.2d at 385).
In the instant case the decision to swerve off the road was undoubtedly made under the excitement engendered by the situation. This excitement did not immediately abate once the initial action was taken, but most likely increased and peaked during the few seconds the vehicle was half-way on the shoulder, tilting toward the ditch on the right and bouncing along the shoulder. During this excitement and confusion Mr. Stanford made the decision to return to the safety of the highway. Under ordinary circumstances this would not be wise, given the fact that the driver failed to apply his brakes to reduce the vehicle's speed so that the maneuver could be accomplished in relative safety. But these were no ordinary circumstances. The driver did not choose to be on the shoulder of the road, he did not and could not foresee the unusual condition of the shoulder, and he could not see that the paved surface was six to eight inches higher than the shoulder. His act may have been an error of judgment, but whether it was negligence was a question for the jury under our long-established law dealing with sudden emergencies.
I also find it particularly troublesome that the majority of the Court feels compelled to abolish the doctrine of sudden emergency. An annotation on the subject of sudden emergency instructions indicates at least 47 states have considered these instructions. See Annot., 80 A.L.R.2d 5 *202 (1961 and Supp. 1979). Although many courts, ours included, have stated that these instructions should be avoided when possible, no other court, to my knowledge, has advocated a total abolishment of the doctrine.[2] To do so would be a meaningless exercise in semantics, since what test is left is the same as before  what a reasonably prudent man might have done when faced with the same or similar circumstances, i.e., a sudden emergency. Over a period of approximately fifty years,[3] we have adopted reasonably simple and easy-to-follow rules dealing with the subject of a sudden emergency. In all these years, only 20 cases have been reversed because of error in or the giving of the instruction. When compared to appeals dealing with other principles of law, this, to me, speaks well of the rule and the understanding of it by the bench and bar, for surely hundreds of cases involving this theory must have been tried in the lower courts over these many years. To abolish the doctrine now will only create more uncertainty in this area of the law than now exists. The lawyers and judges will be left in the dark trying to devise new instructions with new wording based on new theories which will in my judgment cause more errors and more appeals than we have had in the past. We have successfully dealt with the problem of sudden emergencies and should not now "monkey" with the law. "Sudden emergencies" are not going away  they will always be around. They must, in some manner, be given the special treatment they deserve. To abolish the doctrine now will create chaos out of what is presently a little confusion. In my opinion, the majority are doing a disservice to the bench, the bar, and the litigants by abolishing this long-established principle of law.
In my judgment, this is a classic case for the granting of a "sudden emergency" instruction. However, the instruction itself was erroneous in that it was not sufficiently tied to the evidence and consequently did not provide a proper guideline for the jury to use in deciding the question.
The case should be reversed and remanded for a new trial.
SMITH and ROBERTSON, P. JJ., and COFER, J., join this dissent.
NOTES
[1] See 36 Mississippi Law Journal 407 (1965).

"The very heart of the sudden emergency doctrine, assuming all other elements are present, is concerned with the reaction of the actor after the emergency arose. It must be remembered that even though the doctrine will excuse a mistaken or unwise choice in many instances, it will not automatically do so. In evaluating the actor's conduct after the emergency arose, the question whether he exercised such care as a reasonably prudent and careful person would have used under the unusual circumstances is peculiarly one for the jury. Only in exceptional cases, where there is no conflict in the evidence, is this issue withheld from the jury. Obviously, an instruction which leaves out this third requirement does not properly submit the issue to the jury and is clearly misleading. Otherwise, the person who invokes the aid of the doctrine would only have to prove that he was faced with a sudden emergency which was not proximately caused by his own tortious conduct."
"Due to the importance of this feature of the sudden emergency instruction, care should be taken to phrase this requirement, as nearly as possible, in the same language as used by the court in the Withers decision. Stating that after the emergency arose the actor `did everything within his power to avoid the collision' is not sufficient to satisfy this requirement. The omission of this requirement cannot be cured by the giving of general instructions which define negligence and set out the general standard of care."
[2] See 86 Mississippi Law Journal 407, 408 (1965). "The basic elements of the sudden emergency doctrine and the limitations thereon can be easily stated in a few short sentences. It is equally easy to quickly grasp a general understanding of the doctrine and the purpose it serves. There exists no great schism among the courts as to its application. No one is advocating the abolition of the doctrine or even a slight alteration, and there are no noticeable trends to interpret. Perhaps this manifest simplicity and lack of fertile soil to provide a battleground upon which great legal minds can engage in verbal conflict are the reasons that little has been written in this area of tort law. It is only in the area of instructions that a problem seems to have entered the picture. As mentioned, in Mississippi this problem has manifested itself in two ways  the erroneous granting of sudden emergency instructions where, as a matter of law, the doctrine does not apply, and the granting of instructions which fail to incorporate the applicable law. The problem does not seem to be confined to Mississippi. A recent and very extensive annotation on sudden emergency instructions in American Law Reports verifies the fact the other jurisdictions have also experienced difficulty in this area. If the doctrine is so simple, why have such a great volume of cases involving the doctrine appeared in the appellate courts across the nation? It seems that proper instructions would necessarily follow if practicing attorneys were well informed as to the basic fundamentals of the doctrine. The requirements set forth in the Withers case should eliminate much of the problem as far as Mississippi is concerned." (Emphasis added).
[3] The first case involving the sudden emergency doctrine was reported over 200 years ago. Scott v. Shepard, 2 W.B. 1. 892, 96 Eng.Rep. 525 (K.B. 1773).

The doctrine was first reported in our Federal system 140 years ago. Stokes v. Saltonstall, 38 U.S. (13 Pet.) 161, 10 L.Ed. 115 (1839).
The doctrine has been a part of Mississippi's jurisprudence since 1933. Vann v. Tankersly, 164 Miss. 748, 145 So. 642 (1933).