# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01164-SCT

*BEVERLY ANN UPCHURCH, AS PARENT AND PERSONAL REPRESENTATIVE OF THE STATUTORY BENEFICIARIES OF TIMOTHY ADAM UPCHURCH, DECEASED*

*v.*

*TERESA ROTENBERRY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/96 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES YOSTE |
| | B. J. WADE |
| ATTORNEYS FOR APPELLEE: | ROBERT L. MOORE |
| | JAMES E. CONLEY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 6/15/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn, and these opinions are substituted therefor.

### STATEMENT OF THE CASE

¶2. This case arises out of a one-car accident that occurred in Oktibbeha County on October 5, 1992. The plaintiff, Beverly Ann Upchurch (Upchurch), filed a Complaint against the defendant, Teresa Rotenberry (Rotenberry) and her father, Walter Rotenberry (Walter) on October 3, 1993. The suit was filed as a result of the alleged negligence of Rotenberry. The Complaint alleges that Rotenberry negligently lost control of her vehicle while driving on Highway 182 in Oktibbeha County, Mississippi, which resulted in the death of Upchurch's son, Timothy Adam Upchurch (Adam). The Complaint further alleged that the Rotenberry's father was guilty of negligent entrustment of the vehicle. More specifically, the Complaint alleges that Rotenberry is guilty of violating Mississippi Code Annotated § 63-3-501 regarding speeding, §63-3-1201 with regard to reckless driving and § 63-11-30 in that she operated her vehicle while under the influence of an intoxicating liquor.

¶3. Walter and Rotenberry both filed an Answer to the Complaint joining issue on all material allegations .

An Order of Non-suit Without Prejudice was entered in favor of Walter on May 20, 1994, and he ceased to be a party in this action.

¶4. This case was tried in Oktibbeha County Circuit Court on the 22nd, 23rd, and 29th days of April, 1996. Rotenberry moved for a directed verdict at the close of Upchurch's proof which was denied. The jury returned a verdict in favor of the Rotenberry.

¶5. Upchurch filed a Motion for Judgment Notwithstanding The Verdict Or In The Alternative For New Trial on May 15, 1996. Upchurch filed a Response to plaintiff's Motion on May 22, 1996. On September 23, 1996, Judge Lee J. Howard entered an Order Overruling Plaintiff's Motion For Judgment Notwithstanding The Verdict Or In The Alternative For A New Trial.

¶6. Upchurch timely filed Notice Of Appeal to this Court on October 11, 1996. The appeal from the verdict of the Oktibbeha County Circuit Court jury and from the denial of the Motion for Judgment Notwithstanding The Verdict Or In The Alternative For A New Trial raises the following issues:

> **I. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE FOR A NEW TRIAL.**
>
> **II. THE JURY'S VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.**
>
> **III. THE COURT ERRED IN NOT ALLOWING EXPERT TESTIMONY ON THE ISSUE OF LOSS OF ENJOYMENT OF LIFE DAMAGES.**

## STATEMENT OF THE FACTS

¶7. While the facts of this case are not necessarily disputed, this case is certainly not without evidentiary difficulties. The case at bar is a perfect example of "he said, she said," with regard to the investigations and testimonies of the Upchurch's and Rotenberry's experts.

¶8. On the night of October 5, 1992, the decedent, Timothy Adam Upchurch, was riding in the passenger seat of Teresa Rotenberry's car while Rotenberry was driving. Adam was the only passenger in the car. The car was traveling west on Highway 182 in Oktibbeha County, Mississippi when Rotenberry lost control of her vehicle. Upchurch claims Teresa left the road suddenly without warning, causing injuries and damages to the decedent that resulted in his death. Rotenberry, however, maintains that she saw a small animal and swerving to avoid hitting it, left the road and lost control of her car. The vehicle struck a tree on the side of the road, and Adam was killed. There were no eyewitnesses to the collision.

¶9. Upchurch presented three witnesses on the issue of liability: Kirk Rosenhan, Larry Guyton and Teresa Rotenberry, who was called as an adverse witness.

¶10. Kirk Rosenhan is a part-time instructor in engineering mechanics at Mississippi State University. He is also a fire services coordinator for Oktibbeha County. Rosenhan came to the accident scene in his capacity as fire services coordinator. He surveyed the scene, including the roadway and the area between the point where the vehicle left the road and where it struck the tree. Rosenhan testified at trial as both an accident reconstructionist and a fact witness to the accident investigation. He testified that according to the **absence**

**of markings** he observed, Rotenberry's vehicle traveled in a straight line from the point it left the road to the point it hit the tree. Rosenhan testified that on the night of the accident he walked the area with lights and could find no scuff marks or skid marks on the road. Rosenhan further testified that he estimated the speed of Rotenberry's vehicle to be 60 mph when it struck the tree. Finally, Rosenhan testified that the vehicle traveled 160 feet after leaving the road and before making impact with the tree. Rosenhan opined that Rotenberry had sufficient time to react once the vehicle left the roadway before it hit the tree.

¶11. The speed the vehicle was traveling when it struck the tree, as well as, whether the vehicle left any marks either on the roadway or the area between leaving the road and striking the tree is also disputed in this case. Rotenberry's expert, Thomas Shaeffer, testified that there were tire marks which began on the road and proceeded off the road, through the grass, and down toward the tree. Shaeffer identified these marks as yaw marks. Shaeffer defines yaw marks as a mark a tire makes when it is still rotating but not traveling in the direction that it is oriented. In other words,

> if you're driving down the road and you - you steer to one direction, the tires are going to go where the steering wheel tells them to go, but the car may not be able to maneuver as quickly as you, uh - as your steering angle that you've just input it, so the tires are still turning, but they're sliding sideways a little bit and what happens then is it typically leaves a - a narrow black mark called a yaw mark on the road surface if it's paved or some sort of concrete surface or something like that.

On direct examination, Shaeffer testified that the car was traveling approximately 25 to 35 mph when it hit the tree. However, on cross examination, Shaeffer testified that the car was going 42 to 50 mph when it made impact with the tree.

¶12. Rotenberry introduced into evidence photographs to corroborate the conclusions of Shaeffer. This Court notes, however, that while Upchurch introduced photos of the vehicle during direct examination of Rosenhan, there were no photos depicting the accident scene either marked for identification or introduced into evidence. When Rotenberry's counsel asked Rosenhan whether he had seen any photographs of the accident scene, he replied, "[I] took them." Rosenhan further testified that he had not seen the photographs of the accident scene, which showed the tire marks, taken by Shaeffer.

¶13. Shaeffer also testified that he observed small pebbles wedged between the rim and tire on both the front left and rear left wheels of the vehicle. This is additional evidence that the vehicle made an extreme right hand turn. All of the evidence presented at trial by Shaeffer was consistent with the vehicle making an evasive maneuver to the right in order to avoid an object on the roadway. Shaeffer's final determination was that the car struck the tree and flipped over on its top, which undoubtedly caused additional damage to the vehicle.

¶14. Rotenberry testified as an adverse witness. Throughout the discovery proceedings and at the trial itself, Rotenberry testified that she could not remember the events leading up to the accident including a two-day period just prior to the accident. However, on November 13, 1992 (about 5 weeks after the accident), Rotenberry did sign a written statement detailing the accident. In this statement, Rotenberry testified that a large animal, either a deer or a dog, ran across the road and into her lane ultimately causing her to leave the road. At the trial, Rotenberry was not able to elaborate at all on her November 13th statement.

¶15. In her brief, Upchurch raises the issue that Kirk Rosenhan, plaintiff's expert, testified that he smelled alcohol on the defendant at the accident scene. However, on direct examination of Rosenhan the following

exchange occurred.

> Q. Did you get close to Teresa Rotenberry?
>
> A. Not really.
>
> Q. Did you get close enough to smell her?
>
> A. No, I didn't.
>
> Q. Did you smell any odor of intoxicant on her?
>
> A. Uh, not on her ... .

On redirect examination after an overnight recess, Rosenhan changed his testimony to say that he had not been specific as to the driver of the vehicle the day before and that he did smell alcohol on the driver the night of the accident. The above exchange, however, makes it clear that Rosenhan was perfectly specific on direct examination in denying that he smelled alcohol on Rotenberry at the scene of the accident. It is noteworthy that Rosenhan did testify on direct examination that he smelled alcohol in the area. Also, the presence of beer in the car is not disputed in the facts of this case.

¶16. Larry Guyton, a trooper with the Mississippi Highway Patrol, also testified for the plaintiff. Officer Guyton testified that he arrived on the scene after Rotenberry had been taken away by ambulance. Officer Guyton spoke to Rotenberry by telephone in her hospital room two days after the accident, October 7th, and again on October 8th. Rotenberry was able to remember the accident at this point. She appeared alert during the conversation. Officer Guyton testified that Rotenberry told him that she was traveling westbound on Highway 182 near Starkville when she saw an animal coming into her lane from the opposite side of the road. She swerved to the right to avoid hitting the animal. In Officer Guyton's opinion, Rotenberry appeared to be telling him the truth.

¶17. Further, Officer Guyton testified on direct examination that Rotenberry told him that she had two beers earlier in the evening at a place called "The Landing" on Highway 182 near Starkville. On cross examination, however, Officer Guyton testified that Rotenberry did not tell him about drinking beer or about being at The Landing. He just asked her how the accident occurred, and she told him. Further, he stated that he did not put anything in his accident report concerning drinking or about being at The Landing. He continued by testifying that Rotenberry had not told him anything different than what was in his report.

## DISCUSSION

**I. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE FOR A NEW TRIAL.**

**II. THE JURY'S VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

### Judgment Notwithstanding the Verdict

¶18. This Court's review must be considered from the last point raised at trial -- in the instant case judgment

notwithstanding the verdict. When reviewing the trial court's denial of JNOV, this Court's scope of review is limited as follows:

> Consideration of the issue implicates our limited scope of review of jury verdicts. Where, as here, the trial judge has refused to grant a motion for JNOV, we examine all of the evidence--not just evidence which supports the non-movant's case--in the light most favorable to the party opposed to the motion. All credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn therefrom are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.

*C & C Trucking Co. v. Smith*, 612 So.2d 1092, 1098 (Miss. 1992).

¶19. Examining all of the evidence in the light most favorable to Rotenberry and accepting all favorable credible evidence tending to support Rotenberry's case and all favorable inferences drawn therefrom as true, this Court concludes that reasonable and fairminded jury members could reach different conclusions. Consequently, the jury verdict stands, and the motion for JNOV is denied.

¶20. This Court will not intrude into the realm of the jury by determining the credibility of a witness and making findings of fact. The jury is the judge of the weight of the evidence and the credibility of the witnesses. *Jackson v. Griffin*, 390 So.2d 287, 289 (Miss. 1980). Through her statement and the testimony of other witnesses, Rotenberry offered evidence explaining the events of that tragic night. The jury considered this evidence, weighed it, and found in favor of Rotenberry.

¶21. The burden of proof rests on the plaintiff. Under Mississippi law, the jury must determine "whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances." *Knapp v. Stanford*, 392 So.2d 196, 199 (Miss. 1981). "All questions of negligence and contributory negligence shall be for the jury to determine." Miss. Code Ann. § 11-7-17 (Supp. 1999). Generally, proximate causation is a matter reserved for the jury. *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 174 (Miss. 1999).

¶22. This Court will not ignore the clear dictates of precedent and the authority granted to the jury by the Legislature by questioning the credibility of Rotenberry as a witness and making independent findings of fact. The jury is the judge of the weight of the evidence and the credibility of the witnesses. *Jackson*, 390 So.2d at 289. This Court has been even more specific regarding the realm of the jury concerning the credibility of witnesses in stating:

> The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore, unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this court will not set aside the verdict of a jury.

*Wells Fargo Armored Serv. Corp. v. Turner*, 543 So.2d 154, 156 (Miss.1989) (quoting *Travelers Indem. Co. v. Rawson*, 222 So.2d 131, 134 (Miss.1969)).

¶23. The jury heard the testimony of all the witnesses and considered all the evidence. The jury found for Rotenberry, giving weight to her prior statement and considering her a credible witness. Such is the duty and right of the jury, but not of this Court. Considering all the evidence, the jury determined that Rotenberry indeed "acted as a reasonable and prudent person would have acted under the same or similar circumstances."*Knapp*, 392 So.2d at 199. According to its duty, the jury concluded that Rotenberry acted reasonably in swerving to the right to avoid an animal and that she did not have time to avoid a tree which lay only 160 feet (or slightly over 53 yards) from where Rotenberry left the road.[1] The jury makes such fact determinations, not this Court.

¶24. Furthermore, the jury was properly instructed when given jury instruction P-10A which states:

> You are instructed that an operator of a motor vehicle has a duty to keep the vehicle under proper control and to drive at a speed which is reasonable and prudent under existing conditions.

> Therefore, if you find from a preponderance of the evidence in this case that:

> 1. The defendant, Teresa Rotenberry, was not driving at a reasonable and prudent rate of speed in view of the existing conditions of darkness on a two-lane highway and/or did not maintain proper control of the motor vehicle by leaving the roadway on October 5, 1992, *and* (emphasis added)

> 2. Such failure was the sole proximate cause or proximate contributing cause of Adam Upchurch's injuries, and subsequent death, then your verdict shall be for the plaintiff.

> However, if you believe that the plaintiff has failed to prove any one of these elements by a preponderance of evidence in this case, then your verdict shall be for the defendant as to this theory of liability.

Adhering to this instruction, the jury found that Rotenberry acted as a reasonable and prudent person would have acted when suddenly confronted by an animal darting in the path of her vehicle. The jury found it reasonable that Rotenberry swerved to avoid this animal and consequently lost control of her vehicle, striking a tree a mere 160 feet from where she left the road. The sudden appearance of the darting animal was deemed the sole proximate cause of the incident. To reiterate:

> The resolution of disputed facts such as this is a duty that devolves upon the jury sitting as finders of fact. (citation omitted) They are charged with listening to the witnesses, observing their demeanor, and coming to their own conclusions of which evidence they find more credible. (citation omitted) Our system of jurisprudence has determined that citizen jurors, employing their native intelligence and collective life experiences, are best qualified to make those judgments. Absent some clear indication that the jurors in a particular case somehow ignored that duty, neither the trial court, nor this Court reviewing the record on appeal, are permitted to interfere in the conclusions reached by these jurors.

*Hughes v. State*, 750 So.2d 1265, 1267 (Miss. Ct. App. 1999).

¶25. The instant case turned on questions of fact that most appropriately were answered by a jury. Under our limited scope of review concerning motions for JNOV, this Court examines all of the evidence in the

light most favorable to Rotenberry and accepts all favorable credible evidence tending to support Rotenberry's case and all favorable inferences drawn therefrom as true. Taking all evidence as true in favor of the defendant, an animal of some type darted in front of Rotenberry's car, prompting an unexpected quick reaction. Given our standard when considering JNOV, it is apparent that reasonable and fairminded jury members could reach different conclusions. In such a case, the jury verdict must be allowed to stand and the motion for JNOV denied. Deferring to the jury and this Court's standard of review, the decision of the trial court must be upheld.

## New Trial

¶26. The standard of review to be followed when reviewing a motion for a new trial has been recited by this Court many times over:

> This Court applies the abuse of discretion standard of review when determining whether a trial court erred in refusing an additur or a new trial. It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not "be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." The party seeking the additur must prove his injuries, damages, and loss of income. In deciding if the burden has been met, we must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom.

*Harvey v. Wall*, 649 So.2d 184, 187 (Miss.1995) (citations omitted). In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. *Nicolaou v. State*, 612 So. 2d 1080, 1083 (Miss. 1992).

¶27. Accepting as true all of the evidence which supports the jury verdict in this case, we conclude that the trial court did not abuse its discretion in failing to grant Upchurch a new trial. The jury finding in this case is not contrary to the overwhelming weight of the evidence. Therefore, this issue is without merit.

### III. THE COURT ERRED IN NOT ALLOWING EXPERT TESTIMONY ON THE ISSUE OF LOSS OF ENJOYMENT OF LIFE DAMAGES.

¶28. Because we decide herein to affirm a defense verdict, there is no need to reach the damages issue.

## CONCLUSION

¶29. The trial court correctly denied Upchurch's Motion for Judgment Notwithstanding the Verdict. There was sufficient evidence contained within the record to support the jury's finding and as such the trial judge was correct in denying plaintiff's Motion for New Trial. We further find that Upchurch failed to make an argument worthy of a finding that the jury's finding was against the overwhelming weight of the evidence. Therefore, the judgment of the trial court is affirmed.

¶30. **AFFIRMED.**

**PRATHER, C.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS,**

**P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶31. Today's case does not revolve around the question of how much alcohol Teresa Rotenberry had in her system when she took the wheel of her Acura on October 5, 1992, or what speed she was traveling when she skidded some 240 feet (81 yards)[2] into the only tree in the field killing her passenger. The question is not what type of animal she may have turned to avoid hitting or how far from the animal her car was. The question is, was there **any** negligence on her part in the one-car crash? Since there was absolutely no negligence on the part of the passenger, a finding of 1% negligence or more by Rotenberry would warrant recovery. The evidence presented at trial clearly established Rotenberry's negligence in this one-car accident and showed that Adam Upchurch was not negligent at all. Even the evidence presented by Rotenberry's attorney claimed that her car was still traveling at a speed of at **least** 35 mph on impact some 240 feet after turning the wheel. A directed verdict should have been granted as to liability and the jury should have only determined damages. Accordingly, I dissent.

¶32. To establish liability for a claim sounding in negligence, the plaintiff must show a duty owed by the defendant to the plaintiff, that there was a breach of that duty by the defendant, and that the breach proximately caused an injury to the plaintiff. *Lyle v. Mladinich*, 584 So.2d 397, 398-99 (Miss.1991). When the trial court has concluded that the plaintiff has proven an injury with such certainty that no reasonable jury could find otherwise, it should direct a verdict for the plaintiff on liability.

¶33. Such a finding was appropriate in this case as even the majority concedes that Rotenberry was speeding at the time of the accident: "Both the expert for the defendant as well as the expert for the plaintiff testified that Teresa was traveling approximately sixty miles per hour when she left the road." (majority opinion, page 14). Highway patrolman Guyton also testified that when surveying the scene the damage was not consistent with the vehicle traveling below fifty-five (55) miles per hour as Rotenberry claimed.

¶34. Rotenberry was traveling, as the majority states, 60 mph on Highway 182 at Clayton Village which experts testified had a posted speed of **fifty-five (55) miles per hour**. Thus, Miss. Code Ann. § 63-3-501 is inapplicable. It is apparent from these facts that Rotenberry was in fact in violation of the speed laws of the State of Mississippi and a negligence per se instruction should have been given to the jury and a directed verdict entered. *Jackson v. Daley*, 739 So.2d 1031, 1038 (Miss. 1999); *Detroit Marine Engineering v. McRee*, 510 So.2d 462, 465 (Miss. 1987). At that point, the trial court should have the limited question to the jury of the proper amount of damages to compensate the plaintiff for that injury. *Harbin v. Jennings*, 734 So.2d 269, 273 (Miss. Ct. App. 1999).

¶35. The deciding questions in this case were answered by Rotenberry's own testimony. At trial, she stated that she left the road and lost control of her car. Rotenberry even admits to drinking (at least two glasses of wine) prior to the fatal collision. Thomas Schaeffer, Rotenberry's expert, could offer no explanation as to why Rotenberry lost control of her vehicle. It is undisputed that there were no problems with the conditions of the road or of the car. Therefore, there is no justification for Rotenberry's actions in losing control of her vehicle, traveling some 240 feet while failing to use her brakes and slamming into a tree at a speed somewhere between forty-two and sixty miles per hour (at least 35 mph by her expert). Rather, there was overwhelming proof that Adam Upchurch died as a result of Rotenberry's failure to maintain control of her vehicle.

¶36. In Mississippi, a driver is charged with maintaining proper control of his vehicle.*See, e.g.* Miss. Code Ann. §§ 63-3-501 (requiring drivers to follow speed limits); 63-3-601 (requiring vehicles to be driven on the right half of the roadway); 63-3-619 (requiring drivers to follow vehicles no more closely than is reasonably prudent); and 63-3-1201 (prohibiting reckless driving). Further,

> [t]he driver of a car is charged with the duty of keeping a proper lookout and being on alert for vehicles, objects and persons ahead in the highway. The driver is charged with the absolute duty of seeing what he should have seen. He is also required to have his car under proper control, to be on the alert on the highway, and avoid striking plain objects.

***Dennis v. Bolden***, 606 So.2d 111, 113-14 (Miss. 1992)(citations omitted). S*ee also **Layton v. Cook***, 248 Miss. 690, 696, 160 So.2d 685, 687 (1964). "Moreover, it is the duty of the driver of an automobile to take reasonably proper steps to avoid an accident or injury to persons or property after having knowledge of the danger." ***Barkley v. Miller Transporters, Inc.***, 450 So.2d 416, 420 (Miss. 1984) (quoting ***Shideler v. Taylor***, 292 So.2d 155, 156-157 (Miss. 1974).

¶37. At trial Rotenberry claimed she had amnesia and relied on her prior statement to investigators that she had swerved to avoid an animal in her path.

> Q: (Wade) So you must have developed amnesia sometime after five weeks after the wreck, is that correct?
>
> A: (Rotenberry) Yes.

Rotenberry was less than sure what type of animal entered the road, the size of the animal, or how far away the animal was when she saw it. In fact, the closer to trial the larger the animal became. She once thought that she might have veered to the right, but at trial, could not say. Even if Rotenberry swerved to avoid an animal she still was charged with exercising the care "a reasonably prudent and capable driver would use under the unusual circumstances." ***Moore v. Taggart,*** 233 Miss. 389, 402, 102 So.2d 333, 338 (1958). By failing to properly apply her brakes, allowing her car to crash into a tree some 240 feet away, Rotenberry obviously failed to exercise the care required under law. Even Rotenberry's own expert witness testified that there was no sign that Rotenberry applied her brakes. Shaeffer, a mechanical engineer who primarily does accident reconstruction, testified:

> Q: (Wade) All right, sir. During that eighty-one yards did you find any evidence that the driver of that vehicle applied her brakes?
>
> A: (Shaeffer) No.

¶38. The evidence clearly showed that Rotenberry was negligent, and she could not offer any justification for her actions. Moreover, whether her vehicle was traveling at sixty miles per hour or forty-two to fifty miles per hour at the time of impact is not of major importance; the fact remains that the 240 feet traveled between the time Rotenberry first turned the wheel and when her car hit the tree. This should have allowed a reasonably prudent and capable driver to turn the steering wheel to avoid the tree, or at least hit the brakes in order to slow down or stop the car. At the very least, she had sufficient time and space to avoid a tree which was 240 feet away from her when she made that fatal turn. As a result, the trial court should have granted a directed verdict (peremptory instruction) as to the issue of liability. Instead, the issue of liability was improperly submitted to the jury.

¶39. Accordingly, I dissent.

**BANKS, P.J., JOINS THIS OPINION.**

1. A car traveling at sixty miles per hour traverses a distance of 160 feet in approximately 1.82 seconds.

2. Apparently, 240 feet (81 yards) is the distance measured from where Rotenberry first swerved to avoid an animal to the tree her car struck. The previous measurement of 160 feet was the distance from the side of the road to the tree.