503 So.2d 112 (1987)
Dudley A. STADLER, III
v.
Everard J. AGARD, et al.
No. 86-CA-525.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
Rehearing Denied March 17, 1987.
Writ Denied May 8, 1987.
Charles W. Schmidt, III, Lance R. Rydberg, New Orleans, for appellees.
Daniel E. Becnel, Jr., Reserve, for appellant.
Before CHEHARDY, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from a negligence action brought on behalf of plaintiff/appellant, Dudley A. Stadler, III (Stadler) against the defendants/appellees, Everard J. Agard (Agard), Agard's employer, Brown & Root, Inc. and their insurer, Highlands Insurance Company. The trial judge entered judgment in favor of defendants/appellees, dismissing plaintiff's/appellant's suit after finding that there was no showing of a breach of duty. Appellant now appeals. We affirm.
On June 10, 1985 Stadler filed a petition for damages against Agard, Brown & *113 Root, Inc. and Highlands Insurance Company. He contends that on or about the morning of April 19, 1985 he was employed by Guardsmark, Inc. as a security guard. On that date he avers that while he was performing his duties at the Shell Oil Refinery in Norco, Louisiana an explosion occurred which resulted in a fire.
He alleges that Agard ran into him, causing him to fall to the ground and sustain injuries.
Stadler urges the following specification of error:
That it was error for the court, after finding that Stadler's allegations and testimony were true as to the facts of the case, to find and reason that defendant Agard breached no duty to Stadler and acted as a "reasonably prudent evacuee seeking safety after an explosion."
One major area of dispute in the case at bar concerns the identification of Agard as the party who ran into Stadler. Agard denied any knowledge of the incident, although he did admit to being at the Shell Plant on the date in question. Bienville Jackson (Jackson), a co-worker of Agard's, testified that he was working with Agard at that time. Both Agard and Jackson admitted that an explosion had occurred.
In her reasons for judgment, the trial judge specifically made no determination of whether there was sufficient evidence to establish Agard as the party who ran into Stadler.
Moreover, she noted that:
accepting plaintiff's allegations as true, [the court] does not find liability. Under the allegations of this case, defendant is charged with the duty to act as a reasonably prudent evacuee seeking safety following an explosion. Plaintiff has not carried the burden of showing a deviation from that standard. Accepting the facts as testified to by the plaintiff, there has been no showing of a breach of duty under the circumstances of this case.
Evidently the trial judge felt it unnecessary to make any factual determinations, including determining whether Agard was the proper party defendant. She obviously found that even if the allegations of negligence asserted by Stadler were true, he has failed to show a breach of due care by the party who knocked him down.
Although appellant asserts that the trial judge heard conflicting testimony and weighed the credibility of the witnesses, we find that she clearly avoided making any factual determinations. In particular she specifically indicated that the case did not require a factual determination relative to the identification.
We therefore must consider whether the trial judge erred in concluding that appellant had not met his burden in showing a breach of duty.
Recently the Louisiana Supreme Court has explained that:
[t]his Court has established that in cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. [Citations omitted]. The duty risk approach as set forth in these cases is essentially an analysis of the following questions in any given case:
Was the defendant's conduct a cause in fact of the accident?
Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
Did defendant breach that duty?
What damages, if any, did plaintiff sustain? Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986) at 569.
The trial judge did not address the issue of whether there was a causal relationship between the injury sustained by Stadler and the fleeing of the alleged tortfeasor from the explosion. We agree with the trial judge that it is unnecessary to consider the issue of causation because the crucial issue in this case is whether the defendant owed a "legal duty which encompassed the particular risk of harm to which plaintiff was exposed?" Forest, supra at 569. This question involves a two-step analysis. The first step is to determine whether the defendant owed a particular duty not to run into Stadler under the *114 particular circumstances of this case. The second step is to determine whether or not this duty, if found to be the case, encompassed the risk of harm which occurred.
The seminal issue in the instant case is the first step, i.e. whether the defendant owed a particular duty not to run into Stadler under the particular circumstances of this case. Inherent in this question is whether there has been a breach of that duty owed to Stadler. In order to answer this question we must determine whether the defendant breached the standard of care.
Negligence cases involving automobiles have developed the doctrine of "sudden emergency". See Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972); Patterson v. Smith, 469 So.2d 1138 (La.App.4th Cir. 1985) and the cases cited therein. The doctrine provides that:
[o]ne who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Under such circumstances, our law does not require a driver to exercise such control or the same degree of care and caution as is required of a person who has ample opportunity for the full exercise of judgment and reason. Snodgrass, supra, 87 So.2d at 131.
More recently, our brothers in the Fourth Circuit have stated that "Our courts have repeatedly held that a driver confronted with a sudden emergency, ... is only required to act as a reasonable man would in similar circumstances." [Citations omitted] 469 So.2d 1138 at 1139.
Although both appellant and appellee make reference to the "sudden emergency" doctrine the trial judge did not do so. She based her determination that the purported defendant was free of negligence on the basis of whether Stadler had proven that there was a breach of duty "under the circumstances of this case." [Emphasis supplied].
The Supreme Court of Mississippi has abolished the doctrine in an attempt to avoid having separate negligence rules for an emergency. Knapp v. Stanford, 392 So.2d 196 (Miss.1980). As explained by the Knapp, supra court in quoting Jones v. Dixie Greyhound Lines, 211 Miss. 34, 50 So.2d 902, 905 (1951):
[t]he emergency rule is not an exception to the general rule requiring reasonable care. The existence of an emergency is simply one of the circumstances contemplated by the normal standard of care, in seeking to ascertain whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances. 5 Am.Jur., Automobiles, Sec. 171. Where an actor is confronted with a sudden emergency, the law does not require of him more that it is reasonable to expect of him under the circumstances which confront him. Although the actor cannot be held to the same standard of conduct as one who has had an opportunity to reflect, this does not mean that any different standard is to be applied in an emergency. The conduct required is still that which is reasonable under the circumstances. Knapp, supra at 198-199.
The Knapp, supra court also noted that:
[t]he Supreme Court of Oregon has analyzed the fallacy of attempting to promulgate separate negligence principles under a "circumstance" called a "sudden emergency" in the case of Harkins v. Doyle, 271 Ore. 664, 533 P.2d 785 (1975); Jones v. Mitchell Brothers Truck Line, 266 Ore. 513, 511 P.2d 347 (1973); and Evans v. General Telephone Co., 257 Ore. 460, 479 P.2d 747 (1971). 392 So.2d 196 at 199.
Moreover, the Knapp, supra court in quoting from the Mississippi Law Journal, Vol. 36 at page 392 (1965) by Virgil G. Gillespie, explained that:

*115 [t]he standard of care in actions based upon negligence is ordinarily measured in terms of the proverbial question: What would a reasonably prudent person have done under the same or similar circumstances? The emergency doctrine provides no exception to this general rule. The test is still the same. The existence of an emergency is simply one of the circumstances in the light of which the actor's conduct must be judged. The rule requiring reasonable care is sufficient to take into consideration the excitement and confusion which normally accompany the emergency situation. While it is said that one confronted with a sudden emergency is not held to the same degree of care as one who had an opportunity to deliberate, this does not mean that any different standard is to be applied than in negligence cases generally. Some courts have spoken in terms of the application of a lower or diminished standard of care in application of a lower or diminished standard of care in emergencies. However, it is clear that they are not referring to the standard itself, but rather to the amount of care required because of the unusual circumstances. Knapp, supra at 199.
In conclusion, the Knapp, supra court opined that:
The test is whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances. Id. at 199.
Our Louisiana Supreme Court has held that "Varying factors affect what the standard of the reasonable man requires." Esco v. Smith, 468 So.2d 1169, 1174 (La. 1985) on remand 478 So.2d 153 (La.App.1st Cir.1985) writ denied 479 So.2d 925 (1985).
As noted by the Louisiana Supreme Court in Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125 (La.1986) "[a]rticle 2315 provides in part: `every act whatever of an [sic] that causes damage to another obliges him by whose fault it happened to repair it.' Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case." Id. at 128.
We have also recently held that "[t]o avoid negligence, a person must comply to the standard of a reasonable person under like circumstances." Trapani v. State Farm Fire & Cas. Co., 424 So.2d 449 (La. App.5th Cir.1982) at 454, writ denied 430 So.2d 76 (La.1983). See also Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171, 176 (La.1977) on remand 350 So.2d 1231 (4th Cir.1977).
Stadler testified that on April 19, 1985 an explosion occurred at approximately 10:58 a.m. He was running away from the explosion. Agard came running behind him at a faster rate and caused him to fall to the ground. Stadler then turned around and looked up at Agard. Agard reportedly stated "Sorry about that, man."
The record further indicates the following responses by Stadler on direct examination:
Q What happened to you as you were running out of the way in terms of where he was running? Were there people to the right, left, front or rear of you or do you know?
A There were people all over trying to  Well, they were going in the same direction trying to get away from the explosion.
Q How far would you say the explosion was from where you were when you were tripped?
A When I was tripped or when I 
Q (Nods head affirmatively.)
A Okay. When I was tripped, I was basically about 500 yards.
Q All right. From where he was working in the unit that he was working on, how far was that away from where the explosion occurred?
A Okay. Where he said he was working, I'm not really sure where that is.
Q Did you ever see him running from behind you before he tripped you?
A No, sir, because I was looking straight ahead, trying to run away.

*116 Q Why were you running away along with the other men?
A Because of the danger of the explosion.
Q Was it a small or large explosion?
A It was a nice size explosion. It was covered by different people of the press.
During cross-examination, Stadler further testified that there were a couple of hundred people in his immediate area and that he himself was running at the time. Furthermore, in his deposition taken on July 25, 1985 and introduced into evidence, he described the scene as "a mass of confusion  everybody running."
Accepting Stadler's factual recitation, the explosion was a serious one in which people started to run in an attempt to flee the hazard. The scene was of mass confusion. Under these circumstances we do not find that the party who ran into Stadler acted unreasonably by running away from a source of imminent danger.
Accordingly, we find no merit to the specification of error urged by appellant. The judgment of the trial court is affirmed. Appellant is to pay costs.
AFFIRMED