CHEHARDY, Chief Judge.
Plaintiffs, Lincoln Property Company; Lincoln Contractors, Inc.; Reíais Esplanade Apartments, Inc.; Esplanade I Associates Limited Partnership and Aetna Casualty and Surety Company (all referred to as Lincoln) appeal from a judgment dismissing their suits against defendants D & M Welding Company, Employers Casualty Company and Republic Insurance Company (all referred to as D & M).
The plaintiffs’ suits, filed either as an original petition or as third-party actions, were brought to recover fire damages sustained by several buildings in the Reíais Esplanade Apartments. The complex was under construction when the fire occurred and was caused by flying sparks from a welding torch used by one of D & M’s employees, Clark Miller.
On appeal, Lincoln asserts the jury erred in its finding that two D & M employees, Miller and Ed Canfield, were borrowed servants of Lincoln. Lincoln further contends the jury erred in failing to find Miller negligent; in finding Lincoln solely negligent; and in finding that it assumed the risk of its damages.
Lincoln Contractors, Inc.; Reíais Esplanade Apartments, Inc.; and Esplanade I Associates Limited Partnership are entities associated with Lincoln Property Company. For purposes of trial, the entities were considered owned by, and referred to as, Lincoln Property Company. Aetna Casualty and Surety Company provided fire insurance to Lincoln on its various properties.
D & M Welding Company contracted with Lincoln to provide the assembly and installation of staircases in the construction of the Reíais Esplanade Apartments (Re-íais) and the Park du Lac. Employers Casualty Insurance Company and Republic Insurance Company are the insurers of D & M.
On June 10,1984, two welders, employed by D & M and sent by the company from its home base in Texas, were assembling and installing metal staircases in the Reíais complex. Welding torches were being used to attach parts of the stairway which were placed flush against the fiberboard walls.
While welding one of the staircases, sparks from the welding torch caused the fiberboard to smoulder. The welder in charge, Clark Miller, immediately doused the smouldering material with water and smothered it with dirt. Subsequently he and his helper, Ed Canfield, left the site to begin work on another staircase. Sometime thereafter Miller was informed that the site of the previous fire was in flames. By the time Miller arrived, the fire was blazing. Canfield immediately contacted the fire department, and the fire was eventually extinguished after causing damage to several buildings in the complex, along with several nearby homes.
Following the fire, Aetna paid Lincoln the amount of its damages under its policy of insurance, less a $5,000 deductible. Both parties then filed suit against D & M to recover its respective losses. In addition, two other suits were filed by neighboring landowners against the Lincoln and D & M groups, inter alia. The three suits were eventually consolidated and during the litigation various third-party demands, cross-claims and reconventional demands were filed by the Lincoln and D & M groups against each other. Ultimately the entity known as Lincoln Property Company was dismissed on a summary judgment from the suits brought by the neighboring landowners and, prior to trial, D & M settled with those parties in the amount of $27,900.
A jury trial on Lincoln’s petition for damages was held on August 12 and 13, 1987. Following the trial the jury found the D & M employees, Miller and Canfield, were borrowed employees of Lincoln; that Miller was not negligent; that Lincoln was negligent; that Lincoln’s negligence was a proximate cause of the fire; and that Lincoln assumed the risk of damages. Thereafter, in conformity with a stipulation of the parties, defendants filed a motion for entry of judgment in order to recover from plaintiffs the $27,900 defendants previously paid in settlement of the claims of the neighbor *1066 ing landowners. The motion was granted and was thereafter incorporated into the trial court judgment dismissing Lincoln’s suit.
Taking plaintiff’s issues out of order, we will address the negligence questions first. Only if we were to find the jury was manifestly erroneous in those findings would we be required to resolve the borrowed servant question.
Plaintiffs contend the jury was clearly wrong in finding Miller, the welder, was not negligent and plaintiffs were solely negligent. In this respect plaintiffs assert Miller, who was in charge of the welding, admitted to accidentally starting the fire, and he and his assistant were fully aware of the danger of fire when working with a welding torch near flammable material. Plaintiffs further contend there was no proof the fiberboard used in the construction adjacent to the stairs was unsafe or substandard.
Under LSA-C.C. art. 2315 and the duty/risk analysis, a party asserting the negligence of the defendant must prove that (1) the conduct complained of was a cause in fact of the harm; (2) defendant owed a legal duty to plaintiff which encompassed the particular risk of harm; (3) the defendant breached the duty; and (4) plaintiff suffered damage by defendant’s breach of duty. Stadler v. Agard, 503 So.2d 112 (La.App. 5 Cir.1987), writ denied 505 So.2d 1145 (La.1987). To avoid liability for negligence, the courts have also held it must be shown the party accused of negligent behavior acted as a reasonable person under the circumstances. Trapani v. State Farm Fire & Cas. Co., 424 So.2d 449 (La.App. 5 Cir.1982), writ denied 430 So.2d 76 (La.1983).
In this case the evidence shows the fiberboard used in the construction of the plaintiffs’ apartment complex was selected by the architect who designed the building and that it is attached to an exteri- or wood frame to serve as an insulating barrier for sound and moisture. The evidence also shows the material is marked flammable, but was nonetheless approved for use in construction of these apartment buildings by the state and city fire mar-shalls.
The witnesses testified the fire occurred on a Sunday. No one from Lincoln was at the site, but several subcontractors including Miller and Canfield were working. The testimony showed this was not unusual.
According to Miller, he and his assistant welder experienced problems with the fiberboard smouldering prior to the incident herein which erupted into a full-scale fire. He stated the fiberboard smouldered several times when he and Canfield were assembling and installing staircases at other project locations. Miller explained he used water and dirt to extinguish those small fires and he brought the problem to the attention of both Ben Bolton, his supervisor, and Wetzel, the Lincoln project supervisor. Miller stated he was told by both parties to continue the work, but to proceed with care.
On the day of the fire, Miller testified he and Canfield were in the process of assembling and installing a staircase in the front of one of the buildings when the fiberboard began to smoulder as a result of flying sparks from Miller’s welding torch. As usual, Miller poured water on the smould-ering portion and rubbed dirt into the fiberboard. Miller stated they continued working on that stairway until it was completed, which took approximately 15 minutes. Miller and Canfield then went to the rear of the building, completed the second stairway and were ready to begin a third when they were notified the area surrounding the first stairway was in flames. At that point the fire was too large to be contained, and the fire department was called. Miller stated approximately 45 minutes had elapsed between the time he put out the original fire and the blaze that resulted in damage to the complex.
Wetzel testified he was notified of the fire while at his home. By the time he arrived, the fire was extinguished. Contrary to Miller’s testimony, Wetzel contended he was never made aware of any problems with fires related to the fiberboard prior to this incident. He also testified he *1067 worked in construction for 35 years, that fiberboard was customarily used in this type of construction, and that he never experienced a problem due to fiberboard catching fire in his 35 years in the business. He did not deny the material was marked flammable, but stated he did not remember seeing such a warning on the fiberboard.
According to Lincoln’s witness Kenneth Prieur, a licensed contractor who oversaw the construction of the project, the type of fiberboard used in the Reíais project is commonly employed in Louisiana in the construction of apartment complexes. He stated further that because the material is flammable, exposure to sufficient heat from tools used by plumbers, welders or electricians often cause the material to smoulder. Prieur testified because such fires are unavoidable and expected, the industry requires workers using heat-generating tools to have fire extinguishers nearby when working close to flammable items. However, Prieur contended the subcontractors are responsible for this precaution as opposed to the general contractor.
Ben Bolton, one-half owner of D & M, also testified. He stated his job entailed overseeing the physical operations of the business, 95 percent of which involves supplying, assembling and installing metal staircases in apartment complex construction projects on a nationwide basis. He contended the usual insulating material used for outside conditions is gypsum board, not the fiberboard utilized in the Reíais Esplanade project. Bolton further stated he had only seen fiberboard used for this purpose twice: once in the Reíais project, and the other in another Lincoln project, Park du Lac, for which D & M was performing similar work at the same time as the Reíais construction.
In his testimony, Bolton explained his company contracted with plaintiffs to supply, assemble and install a type of metal staircase which arrived at the site in three pieces (two sides, known as stringers, and the stairs section). In order to assemble the stairway, he stated, it is necessary to weld the parts together, after which it is attached to an existing wall, in this case flammable fiberboard. He pointed out D & M neither chose the insulating material nor the location for placement of the stairway. In addition, Bolton testified he had available, and offered to plaintiffs, another type of metal stairway which did not require welding or the use of fire-generating tools. He stated, however, the plaintiffs decided to order the type requiring welding because it was specified in the building plans.
Finally, Bolton testified Miller told him he was having difficulties with the fiberboard smouldering prior to the fire. Contrary to Wetzel’s testimony, he contended he discussed the problem with Wetzel and they concluded nothing would happen if Miller were careful.1
After listening to the testimony in this case, the jury found Miller was not negligent. It further found plaintiffs were solely negligent, their negligence was the proximate cause of the accident, and that plaintiffs assumed the risk of their damages. Factual findings of the trial court may not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Considering the evidence in this case which showed, among other things, the plaintiffs were aware of the danger and a viable alternative was available through the use of another type of stairway which did not require the use of welding torches, we cannot say the jury was clearly wrong in finding plaintiffs solely negligent, and in finding their negligence was the proximate cause of the fire. Further, we do not find manifest error in the jury’s finding that Miller was not negligent since the testimony showed he acted as a reasonable, prudent man under the circumstances.
The final issue involves the jury’s determination that Lincoln assumed the risk of injury. In this regard, plaintiffs point out the Louisiana Supreme Court recently held the doctrine no longer has a place in Louisiana in light of comparative negligence, except in limited circumstances. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).
*1068 We have already determined that the jury did not err in finding plaintiffs 100 percent negligent for the damages it sustained in the fire. Thus, any further discussion of plaintiff’s conduct based on Murray or on pre-Murray applications of the assumption-of-the-risk doctrine is unnecessary.
Accordingly, the judgment of the trial court is hereby affirmed. Appellants are to pay all costs of appeal.
AFFIRMED.