NESTOR L. CURRAULT, Jr., Judge Pro Tem.
Jay Blanchard, plaintiff, filed suit against the Parish of Jefferson to recover for personal injuries he sustained when he stepped on the cover of a water meter located in the lawn area, one foot from the sidewalk, in front of the premises bearing Municipal No. 4005 15th Street in Marrero, La., owned by his father, Kerny Blanchard. Plaintiff urged right of recovery under the strict liability concept of C.C. art. 2317 and negligence concept of C.C. arts. 2315 and 2316. The trial court concluded that the accident was caused by the water meter not being seated properly due to grass growth and accumulation between the lid and meter box and awarded to plaintiff general damages of $30,000.00 and special damages of $5,451.51 for a total of $35,-451.51 plus interest and costs.
Both plaintiff and defendants perfected devolutive appeals. On appeal defendants contend the trial court erred in finding the Parish negligent and failing to find the plaintiff had assumed the risk or was comparatively negligent. On the other hand, plaintiff argues the trial court correctly found the Parish at fault and properly assessed the general damages but erred in failing to make an award for lost wages. We affirm.
The injury occurred on May 25, 1987 when plaintiff went to visit his father. According to plaintiff, he got out of his truck and started walking toward his father who was cutting grass in the yard. On the way, he stepped on the cover of a Jefferson Parish-owned water meter. The cover flipped and plaintiffs right foot went into the water meter housing, thus hyperex-tending his knee with consequent injury.
Kerny Blanchard testified that he did not see his son fall. However, when he momentarily stopped the electric weedeater he was using to cut grass, he heard the water meter top make a noise (“it sounded like a clanking noise”) and simultaneously heard his son cry out in pain. When he turned, he saw his son lying on the ground.
Both Blanchards testified the meter had sunk several inches (4" to 6") and at an angle. Kerny Blanchard also testified he had called the Parish on two occasions (March and May 1987) prior to the accident to report the condition of the meter and requested its repair. However, the meter was not fixed until several days after the accident and only after he had called and reported the accident.
Randy Schuler, Administrative Services Manager for the Parish, testified that the water meter was last checked on May 8, 1987 by an employee (who is no longer working with the Parish) 17 days prior to the accident. Schuler explained that meters were read every two months and that meter readers were to report malfunctions with the meters or any safety problems with the water meter boxes or housings. In this ease, the meter reader did not report any hazardous condition. Schuler also stated that he had no record of complaints lodged on the meter in question other than the one received after the accident which prompted him to re-set the meter about two inches higher.
Harold Meyers, the Parish’s witness, who was accepted as an expert in mechanical engineering, testified that he observed the water meter in question one week before trial and found it to be engineerly sound. In his opinion, a two inch differential in the ground level and the meter would not cause the meter to be “per se” unsound. However, if the lid on the housing was not properly seated on the lip, or if it was cocked slightly and someone stepped on it, the lid could crater into the hole.
The trial court concluded that the accident was caused by the water meter’s lid not being seated properly on the lip due to grass growth and accumulation between the lid and meter box. Further, the evidence revealed the meter was sunken. The court based its conclusions on certain photographs submitted by plaintiff into evidence which were taken a few days after his accident. From these pictures, the trial court deduced that the meter was sunken *1228 below ground level and contained grass and debris. The risk created by the defects were not deemed unreasonable for strict liability purposes, instead the court found the Parish negligent.
The Supreme Court’s most recent summary of the manifest error rule appears in Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990), as follows:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra at 844; Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987); Boulos v. Morrison, 503 So.2d 1 (La.1987).
We agree with the trial court and conclude that strict liability is inapplicable in this case. In order to recover under strict liability plaintiff must prove that the thing which caused the damage was in the care or custody of defendant, the existence of a defect or vice of the thing, and that the damage was caused by this defect or vice. Loescher v. Parr, 324 So.2d 441 (La.1975); Tracy v. Jefferson Parish, 523 So.2d 266, 270 (5th Cir.1988), writ denied 530 So.2d 569 (La.1988).
For a thing to be defective within the meaning of strict liability under C.C. art. 2317,[1] it must create an unreasonable risk of harm. Loescher, supra; Tracy, supra. The key word is “unreasonable” and the plaintiff must show that the risk created was unreasonable under all circumstances. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Tracy, supra. Municipalities and other public bodies may be held liable for damages caused by things in their custody under C.C. art. 2317. Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La. 1980). In the present case, the Parish stipulated it had the care, custody and control of the water meter and its box.
Generally, the jurisprudence involving injury-causing water meters has held that strict liability is not a remedy, concluding that while open meter holes might constitute a defect, the risk of harm was not considered “unreasonable” in light of the social and economic factors involved in preventing the injury based on the balancing test promulgated in Entrevia, supra.
In this case, the evidence failed to show the meter lid in question was in any way inherently defective. Instead, the trial court found the accident was caused by a condition in the meter’s lid, i.e., it was not properly seated due to grass and debris between the lid and the meter box and that the meter had sunken.
Although we find strict liability inapplicable in this case, our review of defendant’s liability does not end with that determination. Tracy, supra. The Parish may alternatively be found negligent if the facts support such a finding. In cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. Tracy, supra at 273; Stadler v. Agard, 503 So.2d 112 (5th Cir.1987), writ denied, 505 So.2d 1145 (La.1987) [citing to Forest v. State, Thru Louisiana Department of Transportá *1229 tion, 493 So.2d 563 (La.1986) ]. The duty-risk approach is essentially an analysis of the following questions:
1. Was the defendant’s conduct a cause in fact of the accident?
2. Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
3. Did defendant breach that duty?
4. What damages, if any, did plaintiff sustain? Stadler, supra at 113.
Under a duty-risk analysis in the instant case, the facts show the Parish’s conduct was: 1) a cause-in-fact of the harm (the Parish’s failure to take care of the water meter to assure that the lid would be properly seated on the lip of the housing and the meter flush with the ground); 2) that the Parish owed a legal duty to plaintiff (to properly maintain water meters) which encompassed the particular risk of harm to which plaintiff was exposed; 3) that the Parish breached its duty to plaintiff (by not properly maintaining the water meter in question); and 4) that plaintiff was damaged by the Parish’s breach of duty (plaintiff suffered an injury to his knee when his right foot unexpectedly flipped the meter lid and he fell into the housing).
Further, as in any other negligence action under C.C. art. 2315, in order to find a municipality negligent, it must be shown that it had actual or constructive knowledge of the risk of harm. Tracy, supra at 273; Jones v. City of Baton Rouge, supra. The trial court in this instance found the Parish to have had actual or constructive knowledge of the defective conditions of the water meter since the evidence indicated that the conditions existed for some time prior to the accident and that the Parish’s meter reader checked the meter every two months, the last check being 17 days prior to the plaintiff’s accident. At the very least, the meter reader should have noticed and reported that the meter was sunken long before the accident herein. Thus the facts show the Parish had a duty to correct the conditions and that it had actual or constructive knowledge of the defective conditions of the meter. Because the defects were not corrected, the Parish breached its duty to plaintiff and that breach caused the accident. Consequently, we find the Parish liable to plaintiff under a negligence theory and we affirm the trial court’s judgment regarding same.
Next, the Parish contends the trial court erred in failing to find comparative negligence on the part of plaintiff. The Parish opines that plaintiff was familiar with the condition of the meter, and that in his capacity as a plumber he had worked with meters before. Hence, according to the Parish, the plaintiff negligently disregarded the conditions he now complains of and a finding of comparative fault is warranted on the part of the plaintiff.
“In this regard, the law does not require a person ‘to exercise the utmost caution at each moment to avoid every hazard of which he was ever aware.’ ” (citations omitted); Tracy, supra at 273. “It allows the reasonable man occasional lapses of memory.” (citations omitted) Id. The question before us, as in the Tracy case, is whether plaintiff was exercising ordinary care for his own safety.
In this case, plaintiff stated he was heading home but decided to spin by his father’s house because his father had been out of town the week before. As he passed down his father’s street, he saw his father working in the front yard so he pulled up on the neutral ground and got out of his truck. He took about three to four steps and then fell in the water meter's hole after the top flipped.
The trial court apparently concluded that plaintiff was exercising reasonable care for his own safety and he did not find comparative negligence. The plaintiff had never resided at this location for any length of time, such that he could commit to memory the location of the water meter. We cannot say the trial court was manifestly erroneous in finding plaintiff free from negligence.
In plaintiff’s appeal, he asserts that the evidence supports an award for past *1230 and future wages.[2] Plaintiff complains that the trial court was clearly wrong in not awarding additional sums for these special damages. , Plaintiff maintains that the record shows he was unable to work in his trade for approximately six weeks and cites to his own statement as sufficient substantiation. Moreover, plaintiff states testimony by his orthopedic surgeon, namely, that plaintiff returned to work some time before July 16, 1987, further buttresses his argument that the evidence supports an award for past wages. Regarding future lost wages, plaintiff suggests the 10% disability assigned to him by his orthopedist is a ground to support future lost wages of 10% proposed by his economist. A leap such as this is unsupportable by the facts.
The trial court concluded that plaintiff did not carry his burden of proof regarding his loss of past or future wages, thus these special damages were not awarded. Damages are measured by the loss sustained by the plaintiff and the profit of which he has been deprived. C.C. art. 1995. Much discretion is left to the trial court for the reasonable assessment of damages. C.C. art. 1999. We defer to the trial court’s conclusion that plaintiff failed to prove these special damages by a preponderance of the evidence. We do not think the trial court abused its discretion in its ruling. Because we find no manifest error, we affirm the trial court’s judgment in its entirety.
Accordingly, the judgment appealed from is affirmed. Costs of this appeal are to be paid by both plaintiff and defendants.
AFFIRMED.

. Civil Code Article 2317 provides in pertinent part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....”

. Plaintiff asserts he is due past lost wages as he could not work for six weeks from the time he was injured until after his arthroscopic surgery and eventual recovery. Plaintiff maintains future lost wages are predicated on his economist expert's conclusion that plaintiffs potential earnings would be 10% more than his actual earnings and that this assumption was established based on the orthopedic surgeon’s finding that plaintiff suffered a 10% residual disability.