ISHEE, J., for the Court.
¶ 1. Late one evening in July 2001, Shenandoah Clark got behind the wheel of his friend’s 2000 Toyota Tundra TRD truck (the truck) in Tupelo, Mississippi, to drive them to a casino out of town. While driving, Clark crashed the truck. Thereafter, Clark suffered severe spinal injuries, causing him to become a quadriplegic. Clark and his then-wife, Christie Johnston Clark (Christie), sued Toyota Motor Sales, U.S.A., Inc., Toyota Motor Co. Ltd., Toyota Motor Corporation, Toyota Motor Distributors, Inc., and Roper Toyota, Inc. (collectively referred to as Toyota) in Hinds County Circuit Court, claiming the truck was defective. After a trial on the merits before Judge Winston L. Kidd, the jury returned a verdict in favor of Toyota. Clark and Christie timely filed an appeal claiming: (1) the circuit court abused its discretion by failing to grant Clark’s motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial; (2) the circuit court abused its discretion by allowing jurors to view the truck and a comparable truck provided by Toyota outside the courtroom; (3) the circuit court erred by submitting jury-verdict sheets to the jury without the modifications requested by Clark’s attorneys; (4) the circuit court abused its discretion by denying Clark’s motion to strike Toyota’s expert witness and refusing to allow Clark to present a rebuttal witness; (5) Toyota’s closing remarks were improper; and (6) the circuit court’s cumulative errors warrant reversal and remand of the case for a new trial. Toyota responded and filed a counter-appeal claiming that Hinds County was not a proper venue and that the circuit court abused its discretion by excluding evidence of Clark’s drinking and intoxication on the night of the incident. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. On the night of July 11, 2001, Clark was shooting pool with friends, including Kevin Knight, at a local pool hall in Tupe-lo, Mississippi. After some time at the pool hall, Knight invited Clark and the others back to Knight’s house, where the group continued visiting. Sometime around midnight, Clark and Knight decided to drive to a casino located in Tunica, Mississippi. Knight began driving the pair in his new truck, but at some point during the trip, he became tired and asked Clark to drive. Clark complied, and shortly thereafter, Knight fell asleep in the passenger’s seat.
¶ 8. While driving around a bend on a highway in DeSoto County, Mississippi, Clark steered the vehicle off of the road, and the truck veered onto the shoulder of the highway. The truck proceeded to barrel down into the wooded area adjacent to the shoulder of the highway and eventually ran up a seven-foot embankment located at a nearby intersection. The embankment acted as a ramp and catapulted the truck into the air where the truck cleared the intersection, rolled mid-air, and crashed upside down into a field on the opposite *410 side of the intersection, ultimately causing the roof above Clark’s head to collapse. The truck continued rolling deeper into the field before coming to a halt on its roof.
¶4. The passenger’s side of the roof remained largely intact, and Knight awoke to discover that he and Clark were suspended upside down, held in place by their seatbelts. Unable to awaken Clark, Knight crawled out of the truck and noticed oncoming blue emergency lights — the result of a passerby having noticed the truck in the field and calling emergency responders to the scene.
¶ 5. Clark and Knight were airlifted to The Regional Medical Center (the Med) in Memphis, Tennessee. Knight was released from the Med with minor, surface damage. However, Clark had suffered severe spinal injuries and was deemed a quadriplegic. Over the next few years, Clark had numerous complications, including incapacitating bed sores, cerebral fluid backups, and surgeries for these conditions as well as others. He also underwent extensive physical therapy but was never able to regain the use of his legs or arms. The stress of his health problems eventually deteriorated his marriage, and he and Christie divorced. He then lived with his parents until his death in 2011.
¶ 6. On December 28, 2001, Clark and Christie filed suit in circuit court against Toyota. Although Toyota had a registered agent for service of process in Rankin County, Mississippi, it also had a designated agent for service of process at Prentice Hall Corporation System in Hinds County, Mississippi. As such, Clark and Christie chose Hinds County to proceed with their action.
¶ 7. A jury trial took place in 2008 before Judge Winston Kidd. Just before the trial, Clark filed a motion in limine to exclude evidence of Clark’s drinking and intoxication on the night of the accident. In particular, Clark attempted to prevent the introduction of medical records from the Med showing Clark’s blood alcohol level was 0.16 on arrival and police records showing Clark had been charged with driving under the influence (DUI). The circuit court granted the motion in limine because “the issue of the cause of [Clark’s] running off the road has been admitted to by [Clark].”
¶ 8. Clark’s counsel also filed a motion in limine to exclude the opinions of Toyota’s expert witness, Lee Carr. Toyota had retained Carr as an expert in accident reconstruction. Alternatively, Clark’s motion requested permission to introduce a rebuttal expert witness in response to Carr’s testimony. After reviewing the motion in its entirety and conducting a hearing, the circuit court denied Clark’s request to exclude Carr and reserved its ruling as to a rebuttal witness.
¶ 9. The two-week trial proceeded, during which Toyota provided an “exemplar” truck of the truck in question so the jury could observe the truck as it would have been before the accident. The exemplar truck was too large to bring into the courtroom, so the circuit judge allowed Toyota to place it by the curb outside the courthouse. The actual truck involved in the incident was also brought to the courthouse and placed by the curb next to the exemplar truck. Despite Clark’s objection, the circuit court allowed the jury, one of Clark’s attorneys, and one of Toyota’s attorneys to be accompanied to the curb by the bailiffs, where they were briefly allowed to view the actual truck and the exemplar truck side by side.
¶ 10. Toyota’s case-in-chief included testimony by Carr. After Toyota rested, Clark attempted to introduce a rebuttal witness to contradict the testimony of Carr. Toyota objected, arguing it had nev *411 er received any information about the opinion intended to be offered by the rebuttal witness. The circuit court agreed and disallowed Clark to introduce a rebuttal witness surreptitiously without giving Toyota any advance notice of his opinions. Accordingly, the circuit judge denied Clark’s request to introduce a rebuttal witness to Carr’s testimony.
¶ 11. At the close of the trial, Clark and Toyota made closing remarks. Toyota’s closing statements referenced Clark’s “bad judgment,” his inability to account for lapses in time, and his outing to the pool hall. Counsel for Toyota explained that Clark’s bad decisions involved his choices to drive late at night and travel well in excess of posted speed limits. In doing so, Toyota’s counsel reminded the jury that it was Clark’s negligence that caused the accident, not Toyota’s.
¶ 12. After closing arguments were made, Clark requested that the jury-verdict sheets be amended to reflect Clark’s injuries as “enhanced injuries.” The circuit court denied this request, and the jury was given the jury-verdict sheets simply referencing “Clark’s injuries.” After some deliberation, ten of the twelve jury members rendered a verdict in favor of Toyota. Clark’s attorneys immediately filed a motion for a JNOV or, in the alternative, a new trial. The circuit court denied the motion.
¶ 13. Clark timely appealed, claiming: (1) the circuit court abused its discretion by failing to grant Clark’s motion for a JNOV or a new trial; (2) the circuit court abused its discretion by allowing jurors to view the truck and an exemplar truck provided by Toyota outside the courtroom; (3) the circuit court erred by submitting jury-verdict sheets to the jury without modifying the language to state “enhanced injuries” in reference to Clark’s injuries as requested by Clark’s counsel; (4) the circuit court abused its discretion by denying Clark’s motion to strike Toyota’s expert witness and refusing to allow Clark to present a rebuttal witness; (5) Toyota’s closing remarks regarding Clark’s “bad judgment,” lapses in memory, and time at the pool hall improperly implied that Clark was under the influence of alcohol; and (6) the circuit court’s cumulative errors warrant reversal and remand of the case for a new trial. Shortly after filing the appeal, Clark passed away. Nancy Clark was subsequently substituted as a party to the case on behalf of Clark, both individually and as the administratrix of Clark’s estate (Clark’s estate). Toyota filed a counter-appeal asserting that Hinds County was not a proper venue and that the circuit court abused its discretion by excluding evidence of Clark’s drinking and intoxication on the night of the incident. Finding no error, we affirm the circuit court’s judgment.
DISCUSSION
I. Motion for a JNOV or, Alternatively a New Trial
¶ 14. The standard of review for a circuit court’s denial of a motion for a JNOV “tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence.” Penny Pinchers v. Outlaw, 61 So.3d 245, 248 (¶ 11) (Miss.Ct.App.2011) (quotation omitted). White v. Stewman, 932 So.2d 27 (¶ 15) (Miss.Ct.App.2006). As to a JNOV, we have held: “If there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.” Penny Pinchers v. Outlaw, 61 So.3d 245, 248 (¶ 12) (Miss.Ct.App.2011) (quotation omitted). Conversely, “a new trial becomes appropriate when a trial court determines that error *412 within the trial mechanism itself has caused a legally incorrect or unjust verdict to be rendered. The motion for a new trial affords trial courts with an alternative to a grant of a [JNOV]....” White, 932 So.2d 27, 33 (¶ 15) (Miss.Ct.App.2006). As such, we review the denial of a motion for a new trial under an abuse-of-discretion standard. Id. at 33, (¶ 16).
¶ 15. Clark’s estate argues the motion for a JNOV or, alternatively, a new trial should have been granted due to numerous alleged errors made by the circuit court, including: allowing jurors to view Toyota’s exemplar truck, submitting jury-verdict sheets to the jury without the modified language requested by Clark’s counsel, refusing to strike Toyota’s expert witness’s testimony, and refusing to allow Clark to present a rebuttal expert witness. Clark’s estate also argues that Toyota’s closing remarks prejudiced the jury enough to require a JNOV or a new trial.
¶ 16. Mississippi Rule of Civil Procedure 50 governs “motions for a directed verdict and for judgment notwithstanding the verdict.” The Comment to Rule 50 states: “Rule 50 is a device for the court to enforce the rules of law by taking away from the jury cases in which the facts are sufficiently clear that the law requires a particular result.” Having reviewed the record, we cannot conclude that the circuit court erred by failing to take the case away from the jury. Neither was the weight of the evidence such that a new trial was proper. The jury listened to arguments, heard testimony, and reviewed evidence submitted by both parties for two weeks before arriving at their verdict. Certainly, the parties’ versions of why Clark’s injuries occurred were markedly different. Clark asserted that the truck’s roof was defective and that the truck should have been able to withstand the subject incident. Toyota argued the truck’s safety features met and exceeded regulation standards, and the truck was designed to withstand a plethora of accidents. However, Clark’s negligence in steering the truck off of the road, up an embankment, and into the air initiated a series of radical events that were not within the expansive range of accidents against which any safety features could have protected Clark.
¶ 17. Both during Clark’s case-in-chief and Toyota’s case-in-chief, Toyota provided witness testimony, documents, and various other types of evidence to contradict Clark’s case. Accordingly, the jury was privy to substantial evidence contesting Clark’s claim. The jury had more than enough evidence upon which it could have relied when deciding Toyota was not at fault.
¶ 18. The determination of whether or not the truck was defective and, if so, whether the defect caused Clark’s injuries was, by nature, a fact-intensive analysis. It is well settled that conclusions as to facts are within the sole discretion of the jury. Upchurch ex rel. Upchurch v. Rotenberry, 761 So.2d 199, 206 (¶¶ 24-25) (Miss.2000) (citation omitted). We have also held “in the face of differing versions of the facts presented by competing parties to the litigation, it is the duty of the jury sitting as finders of fact to assess the credibility of the witnesses and determine what weight and worth to give any particular element of the evidence.” Thompson ex rel. Thompson v. Lee County Sch. Dist., 925 So.2d 57, 70 (¶ 19) (Miss.2006) (citation omitted). As such, while some cases provide an opportunity for the circuit court to remove the case from the province of the jury due to the facts being sufficiently clear to overturn the jury’s verdict, the present case does not fall within that category. The weight and sufficiency of the evidence warranted the circuit court’s de *413 nial of Clark’s motion for a JNOV or, alternatively, a new trial. This issue is without merit.
II. Observation of the Actual Truck and Toyota’s “Exemplar” Truck
¶ 19. The standard of review is abuse of discretion when reviewing whether a circuit judge erred by allowing a jury to view property outside of the courtroom. Miss. Code Ann. § 13-5-91 (Rev.2002). During the trial, the circuit judge allowed the jury to observe the truck and an undamaged similar truck, an “exemplar,” at the street curb outside of the courtroom. Two attorneys, one representing each party, were also allowed to view the actual truck and the exemplar truck. All persons were escorted by the circuit court’s bailiffs. No testimony was rendered, nor were the jurors and attorneys allowed to speak while observing the vehicles.
¶ 20. Clark’s estate contends it was reversible error for the circuit court to have allowed the jurors and attorneys to observe the vehicles while unattended by the judge and other court personnel. Mississippi Code Annotated section 13-5-91 grants a circuit judge discretionary authority to allow parties and jurors the right to view or inspect property outside of the courtroom. Id. However, in doing so the statute states:
The whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object[,] or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case.

Id.

¶ 21. The record reflects that only the jurors, two attorneys, and certain bailiffs were allowed to view the vehicle. The statute clearly provides that the entire court, including the judge, clerk, sheriff, and deputy sheriffs, “shall proceed, in a body” to the location of the property. Id. As such, we agree it was error for the circuit court to have refrained from accompanying the jurors, attorneys, and bailiffs. We also find error in the circuit court’s failure to order that a witness be present to “point out and explain to the court and the jury” what they were viewing. Id.
¶ 22. However, as stated previously, no one was allowed to comment while viewing the vehicles. Because no one was permitted to discuss the vehicles while the viewing took place, there was no risk of the jurors becoming prejudiced against one party or the other. Each juror was allowed to form his or her independent opinion as to what he or she observed without undue influence from comments or conversations with other jurors or other persons present at the inspection site. The mere fact that the circuit judge, clerk, and sheriff were not present does not indicate, on its own, that the jurors were prejudiced against Clark or Toyota.
¶ 23. Additionally, while the statute calls for a witness to be present to explain the property in question, ample testimony was provided both prior to and after the viewing to explain to the jurors the significance of the two trucks. Furthermore, common sense dictates the jurors understood that one vehicle was the truck in question, and the other vehicle was a similar, but undamaged, truck.
¶ 24. This method of viewing the vehicles resulted in no more or no less influence than what would have occurred had the entire court been present at the site of the vehicles. Accordingly, although we have determined the circuit court erred, we find the error was harmless. This issue is without merit.
*414 III. Jury-Verdict Sheets Reflecting Clark’s “Enhanced Injuries”
¶25. With regard to our standard of review for analyzing jury instructions, we have held:
When an appellate court reviews a claim of trial court error in granting or denying a jury instruction, it is required to review all of the instructions as a whole. Defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole, fairly— although not perfectly — announce the applicable primary rules of law.
O’Keeffe v. Biloxi Casino Corp., 76 So.3d 726 at 731 (¶ 22) (Miss.Ct.App., 2011) (internal citations omitted). Here, Clark’s estate argues the jury was confused by the omission of the adjective “enhanced” to describe Clark’s injuries in the jury verdict sheets. Specifically, Clark’s estate asserts “Special Verdict Sheet 23” and “Special Verdict Sheet 24” were erroneous.
¶ 26. Special Verdict Sheet 23 reads as follows: “We the jury find from a preponderance of the evidence that Shenandoah Clark has proven by a preponderance of the evidence that his injuries were the proximate cause of the negligence of the Defendants.” Likewise, Special Verdict Sheet 24 reads: ‘We the jury find that Christie Johnston [Clark] proved by a preponderance of the evidence that her injuries were caused by the negligence of the Defendants.” Underneath each of the aforementioned sentences was a line where the jury was to mark ‘Tes” or “No.” The jury marked “No” on both forms.
¶ 27. Clark’s estate argues that the failure to include the word “enhanced” on the jury-verdict sheets improperly caused the jury to believe that Toyota’s negligence was an “all-or-nothing determination,” compounded by the fact that Clark’s counsel indicated Clark knew he was responsible for the truck leaving the highway on the night of the accident. Clark’s estate claims inclusion of the word “enhanced” with regard to Clark’s injuries would have placed the question of Toyota’s liability more squarely in context with the issue of Toyota’s alleged negligence. We disagree.
¶28. First, while Clark’s estate complains it petitioned the circuit court to change the language in the jury-verdict sheets to no avail, the record reflects that the jury-verdict sheets were created and tendered by Clark’s counsel at the objection of Toyota. Had Clark wished to include the word “enhanced,” there was ample opportunity to provide for such before offering the jury-verdict sheets to the circuit court. A latent request by Clark to change the jury-verdict sheets they had already submitted to the circuit court does not constitute error on the part of the circuit judge. Indeed, we have previously addressed this exact issue in the context of criminal cases and have held that we “will not reverse for an error created by [a party’s] own instruction.” Carr v. State, 655 So.2d 824, 847 (Miss.1995) (citing Young v. State, 420 So.2d 1055, 1057-58 (Miss.1982)).
¶ 29. Additionally, the standard for our review is whether the jury-verdict sheets confused the jury when considering the sheets and jury instructions taken as a whole. Having reviewed the entirety of the jury instructions and jury-verdict sheets, we cannot say the failure of the circuit court to add the word “enhanced” to describe Clark’s injuries on two special verdict sheets was erroneous. The jury-verdict sheets were explicitly clear that the jurors were to determine whether Toyota was liable in any way for Clark’s injuries. The mere addition of the word “enhanced” when describing Clark’s injuries would have made no further clarification as to Toyota’s potential negligence. The jurors *415 were aware Clark was responsible for driving the truck off the road. They were also aware Clark’s injuries occurred when the truck catapulted into the air, landed on its roof, and barrelrolled through a field. We cannot conclude the jury-verdict sheets at issue caused any confusion in the minds of the jurors as to the issues presented to them for determination. It was inextricably clear in the sheets that the jury was charged with deciding whether or not Clark met his burden of proof in demonstrating Toyota was liable for his injuries. The jury unequivocally stated Toyota was not at fault. This issue is meritless.
IV. Admission of Toyota’s Expert Witness and Refusal of Clark’s Rebuttal Witness
¶ 30. “The standard of review for the admission or suppression of evidence in Mississippi is abuse of discretion.” Troupe v. McAuley, 955 So.2d 848, 855 (¶ 19) (Miss.2007) (citation omitted). “The trial judge has the sound discretion to admit or refuse expert testimony; an abuse[-]of[-]discretion standard means the judge’s decision will stand unless the discretion he used is found to be arbitrary and clearly erroneous.” Id. at 856 (¶ 19).
¶ 31. Clark’s counsel filed a motion in limine to strike the testimony and challenge the admission of Toyota’s expert accident reconstructionist, Carr. Clark’s counsel alleged Carr failed to respond to certain questions asked of him and Carr’s opinion on accident reconstruction was inaccurate, speculative, and unreliable.
¶ 32. During Carr’s deposition, he produced videos of crash tests he had run on a truck similar to the truck in question. The crashes Carr mimicked were very similar to Clark’s accident with regard to testing the strength of the truck’s roof. Clark asserted Carr met with another Toyota expert at Carr’s home to review the videos in question. In his motion in limine, Clark objected to Carr’s failure to answer personal questions in his deposition regarding his home. Specifically, Clark asked Carr personal questions surrounding his ownership interests in the property in Santa Barbara, California, including the home’s address; Carr declined to answer.
¶ 33. Clark next questioned Carr’s methodologies used in his crash tests. One test Clark objected to in particular was designed to replicate the truck’s orientation with the ground at the moment of impact. The results gave Carr data with which to measure the energy that must have been present for the roof of the truck to have caved in the same way that occurred in Clark’s accident. The energy measurement produced allowed Carr to gauge the vertical drop the truck experienced when it descended from the air into the ground. In doing so, Toyota was able to describe to the jury exactly what had happened when the truck became airborne and crashed into the field. Toyota was further able to explain why the safety features required by the government, which were met and exceeded by Toyota, could not have been expected to protect Clark from injury in the accident due to the extreme circumstances of the crash. Essentially Carr’s test results provided scientific evidence of Toyota’s defense that the truck’s roof was not defective. Clark also objected to Carr’s second visit to the accident site, during which he conducted further tests to ensure his test results were accurate.
¶ 34. At trial, Clark asserted the aforementioned objections and used them as a basis to request that the circuit court exclude Carr as an expert witness under the theory that he did not meet Daubert requirements to testify as an expert in the area of accident reconstruction. Alternatively, Clark requested that if Carr were *416 allowed to testify, the circuit court grant him permission to produce a rebuttal witness. After hearing oral arguments from counsel for Clark and Toyota, the circuit judge recessed to review the pleadings, motions, briefs, and other applicable documents. The circuit court then denied Clark’s motion to exclude Carr’s testimony and reserved ruling on Clark’s request to produce a rebuttal witness.
¶35. After Toyota rested its case-in-chief, Clark attempted to call Dr. Terence ■ Honikman to the stand as a rebuttal witness to Carr’s testimony. The circuit court determined that Dr. Honikman’s opinion as to Carr’s testimony had never been provided to Toyota, but Carr’s testimony had been provided to Clark well in advance of trial. Specifically, the circuit judge stated: “I’m concluding right now that it’s going to end, and the rebuttal witness will not be allowed[,] in that the court finds that any opinions should be disclosed to the other side, and if they were not disclosed prior to trial then the opinion will not be admissible.”
¶ 36. Mississippi Rule of Civil Procedure 26(b)(4) governs expert-witness discovery. Rule 26(b)(4)(A)© reads:
A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
Here, Toyota timely provided Clark with the facts and opinions, as well as summaries of the grounds for his opinions. The record also reflects Clark was provided with Carr’s complete written opinions about his findings in advance of Carr’s deposition and well before the discovery deadline and trial. Clark was given ample opportunity to question Carr as to his methodologies during the deposition, and again on the witness stand at trial.
¶ 37. Furthermore, the circuit court allowed an extensive Daubert analysis to be performed on Carr under oath prior to his testimony at trial. Therein, Carr discussed his extensive educational background, including his bachelor of science in mechanical engineering from Northwestern University and a masters of science in mechanical engineering from the University of Florida. Carr then explained his work history, which included sixteen years as an engineer at Ford Motor Company (Ford) designing various vehicle parts, including, but not limited to, body-mounting systems, crash-protection systems, driver-operative controls, steering controls, braking controls, hand controls, safety-belt systems, and power-train systems. Carr was also responsible for testing the vehicles and comparing the test results to Ford’s internal protocols and safety standards. This involved conducting crash tests, investigating crashes, reconstructing crashes, and then problem-solving for Ford in light of the results from the crash tests.
¶ 38. Eventually, Carr became responsible for “investigating crashes to determine whether or not there were defects present and [whether] Ford vehicles would require a recall action.” Carr was also in charge of “the certification of Ford vehicles to federal standards [and] safety standards around the world.” Carr later left Ford and became an independent consultant, opening his own business called Carr Engineering, Incorporated, which was still in existence at the time of the trial. His job at Carr Engineering varied. He testified he conducted failure analysis as an independent contractor, which involves “testing of vehicles, design consulting *417 about vehicles, design about compliance to federal standards and doing tests to evaluate the vehicles in all those regards.” He further stated: “My business then and my business today has a substantial part of its investigation of crashes like this one where there’s litigation that’s been brought where there is a lawsuit pending.” Carr went on to describe his then-current job duties and was heavily questioned by attorneys for both Toyota and Clark.
¶ 39. Ultimately, we cannot conclude the circuit judge abused his discretion by allowing Carr to testify. Carr’s tests and methodologies were provided to Clark well in advance of trial and within the allotted time frame. Clark had more than enough time to question Carr thoroughly as to the science behind his tests and gather information to contest Carr’s claims at trial. Furthermore, after a thorough review of the record, it is evident that Carr was qualified to testify as to the accident in question and the truck’s performance in the accident.
¶ 40. Finally, with regard to Dr. Honikman, the record reflects Clark never indicated Dr. Honikman had an opinion contesting Carr’s methodologies and testing, particularly with respect to the energy-measurement test discussed above, pri- or to an attempt to call him as a rebuttal witness. The Mississippi Supreme Court has addressed the issue of a plaintiff attempting to call an expert as a rebuttal witnesses without advising the defendant of the expert’s opinions:
If the rules allowed the strategy [such as Clark’s attempt to call a rebuttal witness], we fail to see why plaintiffs would designate and disclose experts. Plaintiffs would be free to simply wait until trial, and then call undesignated experts to “rebut” the defendant’s casein-chief. The only protection from this tactic would be for a defendant not to offer any evidence in its case-in-chief.
Banks v. Hill, 978 So.2d 663, 666 (¶ 13) (Miss.2008) (footnote omitted). Accordingly, we find these issues are without merit.
Y. Toyota’s Closing Remarks
¶ 41. We review a circuit court’s admission or suppression of evidence under an abuse-of-discretion standard. Troupe, 955 So.2d at 855 (¶ 19) (citation omitted). Prior to the start of the trial, Clark filed a motion in limine to exclude all evidence and any mention of Clark’s use of alcohol and subsequent DUI charge on the night of the accident. The circuit judge ruled as follows:
[T]he court finds that the issue of the cause of them running off the road has been admitted to by the plaintiff. The court finds that the defendant would be entitled to a comparative[-]negligenee instruction as to how much liability the plaintiff would have for his own injuries. Then the question comes up as to whether or not the DUI or the alcohol is relevant to that comparative[-]negligence instruction. Being that the plaintiff has indicated that the plaintiff caused the vehicle to roll off the road, then certainly the jury would be able to consider that in placing any negligence on the plaintiff in terms of his own injuries. Therefore, the court finds that the DUI and the alcohol is [sic] not relevant to any issue in this case and will not be allowed.
¶ 42. No mention of Clark’s use of alcohol was made during the trial. However, facts such as Clark’s decision to drive to Tunica, Mississippi, late at night, and Clark’s driving the vehicle off of the road were acknowledged by both parties and pointed out to the jury. Later, in closing arguments, Toyota’s counsel made reference to Clark’s “bad choices,” “bad deci *418 sions,” and “bad judgment.” Toyota’s counsel said:
Unfortunately, Mr. Clark made some bad choices and some bad decisions on the night of July 11th and the early morning hours of July 12th, 2001. How do we know that[?] He decided to drive from Tupelo to Tunica very late at night. He was traveling on Highway 78 at about 90 miles an hour. We heard Kevin Knight tell us that in his deposition. It was after midnight, he approached the curve, he took his eyes off the road and took his hands off the wheel. Those were some bad decisions and unfortunately he could not control the consequences.
Later, Toyota’s counsel also stated: “We’re not here because of any bad judgment or bad decision made by Toyota.”
¶ 43. In its brief on appeal, Clark’s estate argues:
While defense counsel did not speak the world “alcohol” aloud in closing, counsel took every effort during trial to create an inference thereto. Particularly during closing, counsel opposite intentionally drew the-jur/s attention to aspects of the case that would suggest the use of alcohol and inferred alcohol was involved .... Counsel also repeatedly stressed lapses in time and Clark’s going out with his friend at the “pool hall.”
¶44. While we agree that Toyota’s counsel made reference to Clark’s attendance at the pool hall with his Mends, his driving to Tunica late at night, and his driving off the road, we disagree that in doing so Toyota’s counsel improperly made reference to Clark’s alcohol use. After a thorough review of the record, we cannot find any reference whatsoever during the entirety of the trial to Clark’s alcohol use. Having also scrutinized Toyota’s closing remarks, the statements made by Toyota that Clark alleges made an inference to his alcohol use were well "within the scope of permissible subject matter for a closing argument.
¶45. The facts that Clark attended a pool hall with friends and then drove, late at night and while speeding, to another town are just that — facts. Clark’s estate cannot expect Toyota to refrain from mentioning the facts describing events leading up to the accident. Furthermore, Toyota’s counsel immediately explained his reference to Clark’s “bad decisions.” He reminded the jury that it was Clark’s negligence, not Toyota’s, that drove the truck off the road and ultimately crashed it into the field. As stated by the circuit judge, Toyota had every legal right to emphasize to the jurors that Clark was contributorily negligent in that he caused the accident. To restrict Toyota from mentioning Clark’s “bad choice” to drive the truck off of the road would have been manifest error on the part of the circuit judge, as it was an essential element of Toyota’s defense. We cannot conclude that Toyota’s closing argument, or any statements made by Toyota during the trial, improperly referenced Clark’s alcohol use on the night of the accident. This issue is without merit.
VI. Cumulative Effect of the Circuit Court’s Decisions
¶ 46. Finally, Clark’s estate argues that even if we were to disagree that each individual alleged error warrants reversal, the cumulative effect of the alleged errors supports reversal and a new trial. We have found only one of Clark’s estate’s arguments to have merit, and we further found that it was harmless error. Consequently, we do not find any cumulative error that would necessitate a reversal. Additionally, having found the claims of Clark’s estate without merit, our ruling, therefore, is dispositive of Toyota’s issues *419 on cross-appeal, and we decline to address them.
¶ 47. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.